# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **KIMBERLY HARSMAN, *et al.*,** | **Case No. 1:21-cv-00597-TSB** |
| **Plaintiffs,** | **Judge Timothy S. Black** |
| **-v-** | |
| **CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, *et al.*,** | |
| **Defendants.** | |

## MERCY DEFENDANTS' MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Defendants Mercy Health Cincinnati LLC; Mercy Health – Anderson Hospital LLC; Mercy Health – West Hospital LLC; Mercy Health Physicians Cincinnati LLC; and Jewish Hospital, LLC d/b/a The Jewish Hospital – Mercy Health (collectively, the "Mercy Defendants") hereby provide this memorandum in opposition to Plaintiffs' Motion to Remand (Dkt. #21):

## I.    <u>INTRODUCTION</u>

The Mercy Defendants' Notice of Removal (Dkt. #1) asserted two independent bases by which this Court has jurisdiction over Plaintiffs' claims:  (i) under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"); and (ii) under 28 U.S.C. § 1331, because the Complaint raises substantial federal questions.  Plaintiffs' Motion to Remand fails to demonstrate that the Court lacks jurisdiction, or that any exception to jurisdiction applies, and must, therefore, be denied.

Plaintiffs' arguments as to why CAFA does not apply are plainly incorrect.  Contrary to Plaintiffs' claim, the proposed class in the Complaint is in no way limited to Ohio residents.  Based on the affidavits Plaintiffs submitted in this action, as well as the three prior class actions Plaintiffs' counsel brought on behalf of essentially identical classes, minimal diversity exists.  Plaintiffs' argument that they can simply amend the Complaint to narrow the class and divest this Court of jurisdiction is also incorrect—federal courts are clear that *jurisdiction is determined at the moment of removal, and that post-removal amendments to alter a class cannot defeat jurisdiction under CAFA.*  (*See numerous cases cited infra* at pp. 7-8.)  Finally, Defendants have shown that, "more likely than not," the amount-in-controversy requirement is satisfied.  The Complaint alleges that there are over 25,000 class members, all of whom supposedly already have or will suffer extensive types of damages due to the vaccine mandate, including loss of income, loss of future earnings, loss of their homes, and injuries to their mental and physical health.  Given these allegations, it is reasonable to conclude that the claimed damages will likely total an average of at least $200 per

class member—surpassing CAFA's $5,000,000 requirement—especially once Plaintiffs' claims for punitive and treble damages, as well as attorneys' fees, are taken into account.

Plaintiffs have not argued or even suggested that any exception to CAFA jurisdiction applies. The Sixth Circuit has held that "*the party seeking to remand bears the burden of establishing an exception to CAFA jurisdiction by a preponderance of the evidence.*" *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016) (emphasis added). It has further explained that "any doubt about the applicability of" an exception "should be resolved against the party seeking remand." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017). Because Plaintiffs have offered no argument or evidence that could possibly demonstrate a CAFA exception applies—let alone a preponderance of the evidence that more than two-thirds of the class are from Ohio—there is no grounds for remand on that basis.

In short, only the Plaintiffs bear the burden on this issue. Regardless, however, the Mercy Defendants do not currently have data available to them regarding the vaccination status of all of their employees, or which ones believe they have been "threatened" or "coerced" to take the vaccine, as the class is defined in Plaintiffs' Complaint. The Mercy Defendants' vaccination policy was only adopted on September 1, 2021, and the policy's vaccination deadline is not until December 1, 2021, making it impossible to determine the residences of the class at this time.

In addition, and independently of whether CAFA applies, the Court should also exercise federal-question jurisdiction because the Complaint raises disputed federal questions that are necessary to the complete resolution of Plaintiffs' claims. Plaintiffs' allegations largely turn on the accusation that the FDA violated federal laws and regulations governing the drug-approval process for the COVID vaccine, raising substantial federal questions about its safety and efficacy.

The Court should deny Plaintiffs' Motion to Remand.

## II.    LEGAL STANDARD

A party that removes to federal court bears the burden of demonstrating by a preponderance of the evidence that federal jurisdiction exists.  *See Smith v. Nationwide Prop. Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007).  Under CAFA, a district court has original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and where the total number of putative class members exceeds 100.  28 U.S.C. § 1332(d)(2), (5).  A party that removes under CAFA must demonstrate that it is "more likely than not" that the statute's elements are met.  *See Smith*, 505 F.3d at 407.  Once that showing has been made, however, the burden shifts to the party seeking remand to establish, "by a preponderance of the evidence," that an exception to CAFA jurisdiction applies.  *Mason*, 842 F.3d at 389.

Federal-question jurisdiction exists when "the complaint alleges *a claim* under federal law, and [ ] the claim is 'substantial.'"  *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (emphasis added).  Contrary to Plaintiffs' suggestion, it makes no difference whether Plaintiffs allege other state-law claims that rely exclusively on Ohio law or the Ohio constitution; a single federal claim is enough to invoke this Court's subject-matter jurisdiction.  *Id.*

## III.    ARGUMENT

### A.    The Court Has Jurisdiction Over This Action Under the Class Action Fairness Act, 28 U.S.C. § 1332

Plaintiffs' Motion to Remand does not dispute that the putative class satisfies CAFA's requirement that the proposed class be more than 100 members.  (*See* Compl., Dkt. #13 at ¶ 5 (alleging that Defendants employ 63,000 individuals, 40% of whom are unvaccinated and, therefore, are members of the class).)  Instead, Plaintiffs raise only two arguments as to why CAFA

jurisdiction supposedly does not exist: (i) CAFA's minimal-diversity requirement is not met because the proposed class includes only Ohio residents and, even if not, Plaintiffs should be permitted to amend the class definition to narrow the class; and (ii) CAFA's amount-in-controversy requirement cannot be met because the primary relief that Plaintiffs seek is an injunction. (Mot. to Remand, Dkt. #21 at 5-6.) These arguments are incorrect, both as a matter of law and based on the allegations in the Complaint and the other pleadings that Plaintiffs have submitted in this and the other, related actions.

### 1.    CAFA's Minimal-Diversity Requirement Has Been Met.

Plaintiffs' primary argument that CAFA does not apply is that "the class Plaintiffs seek to represent is limited to residents domiciled in Ohio." (Mot. to Remand, Dkt. #21 at 5.) The plain language of the Complaint flatly contradicts this claim. The class definition includes no such limitation regarding the residences of class members:

> The members of the Class are every person who is being threatened, coerced, and illegally required to receive the COVID 19 vaccine by a date certain or face immediate termination and/or other adverse consequences to their employment, careers, and reputations. The Class also includes every person being threatened with termination, fines, and other adverse consequences for refusing to receive a COVID vaccine as a condition of employment.

(Compl., Dkt. #13 at ¶ 6.)

Nor is there any allegation anywhere else in the 557-paragraph Complaint that even remotely attempts to limit the class to only Ohio residents. The lone citation Plaintiffs offer supporting their claim states simply "*See Complaint.*" (*See* Mot. to Remand, Dkt. #21 at 5.) But, tellingly, that generic citation does not identify a single paragraph in the Complaint that supposedly backs the Plaintiffs' claim that the proposed class is Ohio-only. In response to a question from the Court at the September 23 status conference, Plaintiffs' counsel even acknowledged that the class includes non-Ohio residents. Plaintiffs' counsel did not claim that the class is limited to Ohio

residents; rather, he offered to amend the complaint, even though an amendment would have no effect on CAFA jurisdiction (as discussed below).

Further demonstrating that minimal diversity is satisfied are the numerous affidavits that Plaintiffs submitted in support of their pending Motion for Temporary Restraining Order and/or Preliminary Injunction. While the affiants do not identify their states of residence, seven of them were notarized in Kentucky. (Mot. for Temporary Restraining Order and/or Preliminary Injunction, Affidavits of Natalie Cunningham, Brendalee Travis, Kellee Yelton, Kaitlin Rawe, Natasha Williams, Monika Dadosky, and Brittany Aldridge, Dkt. #14-1 at 1-2, 14, 17-18, 23, 24, 25, 26.) In their Notice of Removal, the Mercy Defendants argued that these affidavits further reflected that the proposed class includes residents of other states. (Notice of Removal, Dkt. #1 at ¶ 16.) Plaintiffs' Motion does not dispute this claim or offer any evidence to the contrary. Nor do Plaintiffs attempt to explain why they submitted affidavits from Kentucky residents in support of their request for a TRO if Kentucky residents are not included in the class definition they proposed.

Finally, the three prior actions that Plaintiffs' counsel brought—against the same Defendants, making the same allegations, and requesting the same relief—all specifically allege that the class members are "residents of and domiciled in the Commonwealth of Kentucky, Ohio and Indiana." (Dkt. #1-1, Ex. A (First Action Compl.) at ¶ 1; Dkt. #1-4, Ex. D (Second Action Compl.) at ¶ 1; Dkt. #1-7, Ex. G (Third Action Compl.) at ¶ 1.) Each of these class actions was brought on behalf of a class that was defined to be substantively identical to the proposed class in this case, as demonstrated in the chart below (with any differences from the current class definition highlighted in bold or strikethrough typeface):

| **Current Class Definition:** | "The members of the Class are every person who is being threatened, coerced, and illegally required to receive the COVID 19 vaccine by a date certain or face immediate termination and/or other adverse consequences to their |
| --- | --- |

|  | employment, careers, and reputations. The Class also includes every person being threatened with termination, fines, and other adverse consequences for refusing to receive a COVID vaccine as a condition of employment." (Compl., Dkt. #13 at ¶ 6.) |
|---|---|
| **First Action Definition:** | "**The proposed class is all employees of Defendants who do not want the vaccinations for Covid.**" (Dkt. #1-1, Notice of Removal, Ex. A (First Action Compl.) at ¶ 576.) |
| **Second Action Definition:** | "The members of the Class are every person who is being threatened, coerced, and illegally required **by the Defendants** to receive the **first shot of Pfizer** COVID 19 vaccine by **September 1, 2021 and the second shot by October 1, 2021** ~~a date certain~~ or face immediate termination and/or other adverse consequences to their employment, careers, and reputations. The Class also includes every person being threatened with termination, fines, and other adverse consequences for refusing to receive a COVID vaccine as a condition of employment." (Dkt. #1-4, Notice of Removal, Ex. D (Second Action Compl.) at ¶ 6.) |
| **Third Action Definition:** | "The members of the Class are every person who is being threatened, coerced, and illegally required **by the Defendants** to receive the **first shot of Pfizer** COVID 19 vaccine by **September 1, 2021 and the second shot by October 1, 2021** ~~a date certain~~ or face immediate termination and/or other adverse consequences to their employment, careers, and reputations. The Class also includes every person being threatened with termination, fines, and other adverse consequences for refusing to receive a COVID vaccine as a condition of employment." (Dkt. #1-7, Notice of Removal, Ex. G (Third Action Compl.) at ¶ 6.) |

The Court can take judicial notice of these pleadings.[1] These complaints confirm that the class

definition asserted in this action necessarily includes residents from multiple states, as the three

prior class action complaints specifically allege. Plaintiffs' transparent attempt to plead around

CAFA by striking the allegation regarding the class members' residences should be rejected.

---

[1] *Harris v. Cooley*, No. 1:17-cv-540, 2019 U.S. Dist. LEXIS 62298, at *9 (S.D. Ohio Apr. 11, 2019) ("A court may take judicial notice of other judicial proceedings." (citing *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010)).

### 2. Plaintiffs Cannot Avoid CAFA Jurisdiction by Amending the Complaint Post-Removal.

Perhaps recognizing that minimal diversity has been demonstrated, Plaintiffs pivot to argue that the Court should grant them "the opportunity to amend the Complaint accordingly," that is, to plead that the class includes only Ohio residents, which they argue would avoid CAFA. (Mot. to Remand, Dkt. #21 at 5.)  This is incorrect as a matter of law.  "The vast majority of courts who have addressed the issue have held that if removal was proper, post-removal amendments do not destroy subject matter jurisdiction under CAFA." *Romano v. Northrop Grumman Corp.*, No. 16-5760, 2017 U.S. Dist. LEXIS 206715, at *10-11 (E.D.N.Y. Dec. 15, 2017) (citing cases); *see also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017) ("CAFA was intended to prevent . . . an amendment changing the nature of the class to divest the federal court of jurisdiction."); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 428 (5th Cir. 2014) (holding that the "[t]ime of removal rule prevents post-removal actions from destroying jurisdiction that attached in a federal court under CAFA"); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380-81 (7th Cir. 2010) ("[J]urisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate class allegations . . . [as] allowing plaintiffs to amend away CAFA jurisdiction after removal would represent a significant risk of forum manipulation.").  Indeed, "[e]very circuit that has addressed the question has held that post-removal amendments do not oust CAFA jurisdiction." *Louisiana v. Amer. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014); *see also F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017); *Cedar Lodge*, 768 F.3d at 428 (5th Cir.); *In re Burlington*, 606 F.3d at 380-81 (7th

Cir.); *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 125 (8th Cir. 2001); *Broadway Grill*, 856 F.3d at 1279 (9th Cir.).

While the Sixth Circuit has not directly addressed this issue in the context of CAFA, it has generally held that "a post-removal amendment of the complaint" is not effective to defeat jurisdiction, "because *jurisdiction is determined as of the instant of removal*." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000) (emphasis added). This is true even though the plaintiff is "master of the claim." *Id*. at 871. Several courts in this district have expressly held that post-removal amendments cannot defeat CAFA jurisdiction, which is determined at the time of removal. *See, e.g.*, *Allen v. Nationwide Mut. Ins.*, No. 2:17-cv-561, 2017 U.S. Dist. LEXIS 181795, at *5 (S.D. Ohio Nov. 2, 2017) ("[P]ost-removal restrictions on the potential class would not change the fact that federal jurisdiction under CAFA was proper at the time of removal."); *Long v. State Farm Ins.*, No. 2:13-cv-786, 2015 U.S. Dist. LEXIS 143975, at *4-6 (S.D. Ohio Oct. 22, 2015) (holding that "[t]he law remains that post-removal events do not oust jurisdiction" under CAFA). *Allen* is directly on point. There, the plaintiffs originally filed a class action that included class members from multiple states. *Id*. at *2. After the defendants removed under CAFA, the plaintiffs filed an amended complaint "purporting to restrict the proposed class to Ohio plaintiffs only." *Id*. at *2-3. The court rejected a motion to remand, however, holding that the amendments "would not change the fact that federal jurisdiction under CAFA was proper at the time of removal," meaning that "subsequent amendments to the Complaint will not divest this Court of jurisdiction under CAFA." *Id*. at *5-6.

In line with this authority, the Court attained jurisdiction over this action under CAFA at the time of removal. The Plaintiffs cannot defeat jurisdiction with a post-removal amendment that limits the class definition to only Ohio residents.

### 3. CAFA's Amount-in-Controversy Requirement Has Been Met.

To satisfy the amount-in-controversy requirement, Defendants need only show that it is "more likely than not" the proposed class is seeking damages of at least $5,000,000. *Smith*, 505 F.3d at 407. "[T]he relevant inquiry is whether the amounts are 'in controversy' not whether . . . Plaintiff will ultimately prove an entitlement to those amounts." *Cowit v. CitiMortgage, Inc.*, No. 1:12-cv-869, 2013 U.S. Dist. LEX 4591, at *17 (S.D. Ohio Jan. 11, 2013) (holding that "Defendant is entitled to rely on the allegations in the Complaint" to show that CAFA's threshold has been met). The amount in controversy includes not only the actual damages that Plaintiffs seek through their claims, but also any punitive damages and attorneys' fees they seek as well. *See Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (punitive damages); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) (attorneys' fees).

To support their argument that the amount-in-controversy requirement has not been satisfied, Plaintiffs half-heartedly offer only this single sentence: "Defendants' assertion that the amount in controversy is over $5,000,000 is purely hypothetical because the main relief that is sought is declaratory/injunctive." (Mot. to Remand, Dkt. #21 at 6.) Plaintiffs provide no further explanation as to why this requirement has not been met. Likewise, they do not address any of the specific arguments the Mercy Defendants asserted in their Notice of Removal as to why the amount-in-controversy requirement is satisfied based on the allegations in the Complaint.

For example, the Complaint alleges that there are likely over 25,000 members in the proposed class—based on the allegation that Defendants "collectively . . . account for nearly 63,000 employees," and that "[n]early 40% [of these] are not vaccinated." (*See* Compl., Dkt. #13 at ¶ 5.) These 25,000 individuals (63,000 x 40%) presumably fall within the class definition because they allegedly have not been vaccinated and face supposedly unlawful consequences if

they are not vaccinated. (*See id.* at ¶ 6.) To satisfy CAFA's $5,000,000 requirement, therefore, it need only appear more likely than not that the Complaint seeks damages that would average to at least $200 per class member.

The Complaint plainly does so. Plaintiffs' claim that the "main relief" sought in their Complaint is injunctive is belied by the numerous allegations throughout their pleading detailing the extensive nature of the damages they seek. For example, Plaintiffs allege that all 25,000 of the class members are subject to a vaccine mandate, and that if they do not comply, they will be terminated by a date certain. (*Id.* at ¶¶ 6, 158, 491, 548, 550.) They allege that they have already suffered damages from "stress, mental and physical pain and suffering, [and] mental anguish" due to the mandate. (*Id.* at ¶¶ 495, 505, 530, 536.) The damages Plaintiffs seek specifically include "lost wages, loss of earnings capacity, lost benefits, lost future earnings, mental anguish, inconvenience, and loss of enjoyment of life as a direct result of Defendants' unlawful actions against them." (*Id.* at ¶¶ 515, 524.) They further allege that "Defendants are in fact taking away Plaintiffs' livelihood" (*id.* at ¶ 522), and that "Plaintiffs face loss of job, career, finances, homes, and other losses based on the [vaccine] mandate." (*Id.* at ¶ 431.) In addition to these damages, Plaintiffs also allege that they are entitled to "treble damages" and "punitive damages" for five of the causes of action they have asserted.[2] (*Id.* at ¶¶ 496-97, 506-507, 531-32, 537-38, 545-46.)

Thus, the Complaint makes clear that *all of the* members of the putative class—which are alleged to be more than 25,000 individuals—have already suffered mental and physical pain and suffering, and face the loss of their jobs, income, and future earning capacity if they do not comply

---

[2] These are Counts VIII (Criminal Coercion); IX (Fraud in the Concealment/Constructive Fraud); XIII (Violation of ORC 2307.60); XIV (Breach of Fiduciary Duty and Negligence); and XV (Duress). Ohio Revised Code 2307.60(A)(1) expressly permits punitive damages for violations of that section. And Ohio Revised Code 2315.21(C)(1) permits punitive damages in "tort actions" if the defendant acted with malice. While the Mercy Defendants dispute that Plaintiffs are entitled to punitive damages, Plaintiffs allege that Defendants acted with malice. (*See* Compl., Dkt. #13 at ¶¶ 435, 496, 506, 516, 525, 531, 537, 545.)

with the mandate. A finding that the class members' loss of a job due to the vaccine mandate was unlawful would almost certainly result in significantly more damages than the $200 needed (on average) for each class member to surpass CAFA's $5,000,000 requirement. Even using the federal minimum wage of $7.25 as a conservative estimate of their wages, each class member would need only claim that they lost 28 hours of work time to reach the threshold. This is even before adding in the additional damages that Plaintiffs claim that the class members have already suffered for mental pain and suffering, stress, inconvenience, and loss of enjoyment of life. Because Plaintiffs also allege that they are entitled to punitive and treble damages, it is even more likely that the class members seek total damages amounting to at least $200 per class member.

The affidavits that Plaintiffs submitted in support of their Motion for Temporary Restraining Order and/or Preliminary Injunction further demonstrate that each class member will likely have at least $200 in claimed damages. For example, class member Brendalee Travis states: "If I do not get the vaccination by my employer's deadline, I will be terminated from my job," and that "I am a single income home and can't afford to lose my job." (Motion for TRO, Dkt. #14-1 at p. 14, ¶¶ 6-7.) In other words, Ms. Travis claims she will lose her only source of income if she is terminated due to her non-compliance with the vaccine mandate. Nineteen of the affiant class members likewise claim that if they "do not get the vaccination by the October 1, 2021 deadline," they "will be terminated from [their] job." (*See* Motion for TRO, Dkt. #14-1 at 1-26.) Because the Complaint alleges that the class members' damages include "lost wages," "lost earnings capacity," and "lost future earnings," it appears almost certain that each class member would claim damages well in excess of the $200 needed on average to meet CAFA's requirements, if their termination were found to be unlawful.

This is further demonstrated by the affidavit of class member Ashley Frantz, who states: "If I do not get the vaccination by the October 1, 2021 deadline, I will be 'suspended without pay' until November 8th at which point my employment will be 'separated.'" (Motion for TRO, Dkt. #14-1 at p. 4, ¶ 8.) Thus, Ms. Frantz claims that she would remain an employee of Cincinnati Children's Hospital Medical Center for five weeks during which she would receive no pay before being terminated. Once again assuming, conservatively, that the federal minimum wage applies, and assuming a 40-hour work week, Ms. Frantz would at a minimum be able to claim $1,450 in lost income during that period, not to mention the lost income after termination. Another affiant, Ms. Frey, similarly claims she will be suspended without pay for at least two weeks before being terminated (*Id*. at p. 6, ¶ 8), providing a minimum of at least $580 in claimed damages for just those two weeks alone. Plaintiffs' affidavits thus demonstrate that (i) the class members claim that their employment is subject to termination if they do not comply with the vaccine mandate; (ii) that they will, at minimum, lose their incomes and wages if they do not comply; and (iii) that at least some, if not all, of the class members are subject to being forced to take mandatory unpaid leave prior to termination that would amount to additional lost income. The resulting damages from these actions—when calculated across the 25,000 class members alleged in the Complaint— would almost certainly exceed CAFA's $5,000,000 threshold.

### 4. Plaintiffs Have Not Satisfied Their Burden of Showing that CAFA's Home-State or Local-Controversy Exceptions Apply.

The Sixth Circuit has made clear that "the party seeking to remand bears the burden of establishing an exception to CAFA jurisdiction by a preponderance of the evidence." *Mason*, 842 F.3d at 389. It has further explained that the party seeking remand bears "the burden of demonstrating that each of the requirements" for an exception were met," and that "any doubt about the applicability of" an exception "should be resolved against the party seeking remand."

*In re Johnson*, No. 19-0506, 2019 U.S. App. LEXIS 32359, at *3-4 (6th Cir. Oct. 28, 2019) (citing *Davenport*, 854 F.3d at 910).

The "home state" exception applies where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The "local controversy" exception applies where (i) more than two-thirds of the proposed class members are citizens of the forum state; (ii) the "principal injuries" resulting from the alleged conduct were incurred in the forum state; (iii) no class action asserting similar factual allegations has been filed against any of the defendants in the preceding three years; and (iv) at least one defendant is a forum-state citizen from whom "significant relief is sought" and whose alleged conduct is a "significant basis" of the claims. 28 U.S.C. § 1332(d)(4)(A).

Here, despite their burden, Plaintiffs have not made any argument that either CAFA exception applies. Nor have Plaintiffs submitted any evidence that could satisfy either exception. The record is barren. This fact alone precludes the application of either the home-state or local-controversy exceptions. *See* 28 U.S.C. § 1332(d)(4)(A)-(B). The local-controversy exception is further inapplicable because there have been at least three class actions "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" within the last three years. (*See* Notice of Removal, Exs. A, D, G, Dkt. #1-1, 1-4, 1-7.) The Court should—and must—reject the application of any CAFA exception on this basis by itself.

Plaintiffs' failure to produce any evidence regarding the proportion of proposed class members who reside in Ohio is particularly notable given the fact that neither the Mercy Defendants nor the other Defendants could ever possess the information necessary to calculate this figure. As defined, the putative class includes "every person" who is "threatened, coerced, and

illegally required" to get a COVID vaccine, or who is "threatened with termination, fines, and other adverse consequences for refusing to receive a COVID vaccine as a condition of employment." (*See* Compl., Dkt. #13 at ¶ 6.) Thus, the members of the class are broadly defined to be those who *refuse to receive a COVID vaccine <u>and</u> who have been threatened and coerced to do so*. The definition is also not limited to employees, as evidenced by the inclusion of an affidavit from Kellee Yelton who is a contractor, not an employee of any of the Defendants.

Furthermore, even if the class was limited to unvaccinated employees of the Defendants—and it is not—the Defendants do not know which ones felt threatened or coerced, or which ones will remain unvaccinated. For instance, as detailed in the attached declaration of Nicole Martel, the Mercy Defendants do not have data reflecting which individuals will refuse to receive the vaccine by the December 1, 2021 deadline—let alone who believes they have been threatened and coerced to do so. (*See* Declaration of Nicole Martel, attached as **Exhibit A** ("Martel Decl."), at ¶¶ 4-5.) That information would reside only with the putative class members and must be provided voluntarily by them. (*See id.*) While the Mercy Defendants have data regarding the percentage of unvaccinated associates in the Cincinnati market for their parent company, this figure includes more facilities than just the Mercy Defendants and does not indicate the states of residence of these unvaccinated associates. (*Id.* at ¶¶ 1, 4.) Simply put, it is impossible to know which individuals ultimately will or will not choose to be vaccinated by the December 1, 2021 deadline or will otherwise claim to be part of this broadly defined class. As a result, the Mercy Defendants cannot possibly identify which individuals fall within the class definition—which is necessary, in turn, to determine what percentage of the overall class members reside in Ohio.

Plaintiffs' failure to assert or argue in their motion to remand that either CAFA exception applies is telling and strongly suggests that their counsel knows Plaintiffs will not be able to satisfy

the two-thirds requirement for both exceptions. If nothing else, Plaintiffs' failure certainly demonstrates that Plaintiffs have wholly failed to carry their burden of demonstrating that any CAFA exception applies. *See Mason*, 842 F.3d at 388-89.

### 5. The Interests of Justice Do Not Support Declining Jurisdiction.

CAFA also provides a discretionary exception where a district court may decline to exercise jurisdiction "in the interests of justice and looking at the totality of the circumstances." 28 U.S.C. § 1332(d)(3). This exception applies where greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." *Id.* The Court must consider the six factors outlined in the statute. 28 U.S.C. § 1332(d)(3)(A)-(F).

As with the two mandatory exceptions discussed above, Plaintiffs bear the burden of demonstrating that the § 1332(d)(3) exception applies as well. *See Mason*, 842 F.3d at 388-89 ("[T]he party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence."); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023-24 (9th Cir. 2007) ("[T]he provisions set forth in §§ 1332(d)(3) and (4) are not part of the prima facie case for establishing minimal diversity jurisdictional under CAFA, but, instead, are exceptions to jurisdiction. . . . The well-established rule that the party seeking remand must prove the applicability of such exception governs with equal force in the context of CAFA as with the general removal statute.").

Because Plaintiffs have not offered any argument or evidence that could possibly demonstrate that § 1332(d)(3)'s discretionary exception applies—including any argument or evidence regarding the number of class members who reside in Ohio or any of the six factors provided in the statute—there is no grounds for the Court to decline jurisdiction under § 1332(d)(3) or any other CAFA exception.

### B.    The Court Also Has Federal-Question Jurisdiction

This Court also has subject-matter jurisdiction because Plaintiffs have embedded substantial federal questions within several of their claims.  Under the substantial-federal-question doctrine, federal jurisdiction over a state-law claim exists if four conditions apply:  "a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Two of Plaintiffs' claims—fraudulent inducement and injunctive relief—necessarily turn on disputed, substantial questions of federal law.

Plaintiffs do not challenge the first, second, or fourth *Gunn* factors, nor can they.  Indeed, those three factors clearly weigh in favor of removal.  The federal issues plainly are necessarily raised and actually disputed.  Plaintiffs premise their fraudulent-inducement claim on the theory that Defendants, in concert with the federal government, have misrepresented the safety and efficacy of the COVID vaccines to fraudulently encourage vaccination.  (Compl., Dkt. #13 at ¶¶ 509-16, 339.)  Plaintiffs even accuse the Defendants and the federal government of "lying about the Pfizer approval," and claim that the Pfizer vaccine "still has not gone through normal FDA testing." (*Id*. at ¶¶ 19, 321, 339.)  At least five of Plaintiffs' claims appear to rely on their claim that the vaccine is experimental and not properly approved by the FDA.  (*See* Counts I (*id*. at ¶ 434), IV (*id*. at ¶ 454), V (*id*. at ¶ 459), VII (*id*. at ¶ 480), and XII (*id*. at ¶ 519).  And for their injunctive-relief claim, Plaintiffs allege that they "have been threatened for choosing not to take an FDA unapproved experimental vaccine which federal law states cannot be mandated because insufficient trials have been conducted and its long-term effects are not known."  (*Id*. at ¶ 548.)  As a result, at least two disputed, threshold federal questions are embedded in those claims:

(i) whether the COVID vaccines are experimental, a specific term under federal law; and (ii) whether the FDA approval process for Pfizer's COVID vaccine was proper and legitimate.[3]

And the federal-state balance would not be disrupted by the Court's exercise of jurisdiction here—it would be preserved.  Exercising jurisdiction here does not federalize all litigation involving vaccination requirements, mask mandates, or any other effort to eradicate COVID-19.  Rather, it keeps these important questions with national implications in the courts most competent to consider national law and policy.  Plaintiffs have crafted their Complaint in a way that necessarily invokes this Court's subject-matter jurisdiction, given their allegations about the federal government's approval of the Pfizer vaccine and the federal government's and Defendants' alleged misrepresentations about the vaccines' safety and efficacy.  A federal court should weigh in on whether its coordinate branch of government properly followed federal law and procedures.

Contrary to Plaintiffs' argument, the third factor also weighs in Defendants' favor.  Plaintiffs raise substantial federal questions about the safety and efficacy of COVID vaccines— and the FDA's approval of those vaccines—that invoke this Court's subject-matter jurisdiction.  In any litigation, a disputed federal question that is necessary to the resolution of a claim will "be significant to the particular parties in the immediate suit."  *Gunn*, 568 U.S. at 260.  But that does not make the question substantial.  For federal-question jurisdiction, substantiality turns on "the importance of the issue to the federal system as a whole."  *Id*.  To that end, the Sixth Circuit has identified four factors to determine the substantiality of a federal question:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in question; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on

---

[3] In any case, federal law will soon require all Medicare and Medicaid-certified facilities to mandate COVID vaccination among their employers.  *See* Press Release, Centers for Medicare & Medicaid Servs., Biden-Harris Administration to Expand Vaccination Requirements for Health Care Settings (Sept. 9, 2021), https://www.cms.gov/newsroom/press-releases/biden-harris-administration-expand-vaccination-requirements-health-care-settings.  This case soon will be moot due to the action of the federal government.

the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc).

All four factors favor exercising subject-matter jurisdiction. *First*, Plaintiffs' allegations implicate federal agency action, given that Plaintiffs accuse the FDA of violating the federal laws and regulations governing the drug-approval process. (*See* Compl., Dkt. #13 at ¶¶ 321, 339.) *Second*, it is impossible to overstate the substantiality of Plaintiffs' federal questions. At issue here is whether Defendants, the FDA, and other arms of the federal government have misrepresented the safety and efficacy of a federally approved vaccine that is essential to combating the deadliest pandemic in American history. So a decision on Plaintiffs' claims could reverberate across the country, impairing Americans' confidence in vaccination and undermining the fight against COVID-19. *Third*, a decision on the federal questions will resolve much, if not all, of this lawsuit. *Fourth*, a decision on the federal questions here will control other cases— including cases Plaintiffs' counsel has filed against other hospital systems. *See, e.g.*, *Abner v. Kettering Health Servs. LLC*, No. 21-cv-03774 (Montgomery Cnty. C.P. Sept. 15, 2021).

Because Plaintiffs' federal questions are nationally significant, this case has little in common with the cases Plaintiffs cite in their Motion to Remand. In *Middendorf v. West Chester Hospital, LLC*, for example, this Court held that the federal issue—whether a hospital system permitted the use of a medical device in a manner that did not comply with the Federal Food, Drug, and Cosmetic Act ("FDCA")—was not substantial enough to warrant subject-matter jurisdiction over medical-malpractice claims. 233 F. Supp. 3d 615, 619 (S.D. Ohio 2017) (Black, J.). Yet, that question had nothing to do with the federal government's compliance with federal law. Its scope was far narrower; it was limited to whether two hospitals complied with the FDCA. So

although "the interpretation of FDCA regulations" was "of supreme importance to the parties in this case, that interpretation" was not "'significant to the federal system as a whole'" and therefore was not substantial enough to warrant federal-question jurisdiction. *Id*. at 620.

For similar reasons, Plaintiffs' reliance on *Gunn* is also misplaced. In *Gunn*, the Supreme Court held that a legal-malpractice claim arising from an underlying patent dispute was not substantial enough to invoke the trial court's subject-matter jurisdiction. 568 U.S. at 260. First, the claim was entirely backward-looking, turning on whether a patent attorney failed to raise a specific argument that led to the invalidation of a patent. *Id*. at 254-55. Second, a state-court decision on that claim would not alter substantive federal patent law, given that federal courts have exclusive jurisdiction over patent claims. *Id*. at 261-62. Finally, the dispute affected only the parties: the plaintiff and his former attorney. *Id*. at 264.

This case, however, is not about a single hospital system's compliance with federal law in a medical malpractice case or a private attorney's mastery of patent law for legal-malpractice purposes. Plaintiffs raise questions about whether the federal government has followed federal law in approving the Pfizer vaccine and whether Defendants, in tandem with the federal government, have misrepresented the safety and efficacy of those vaccines. These questions affect every American. Indeed, Plaintiffs' claims threaten the continued use of the COVID vaccine and the federal government's efforts to suppress COVID-19. Nor is this case backward-looking. Plaintiffs seek injunctive relief to avoid the vaccine, and a decision here could affect other healthcare providers' ability to require vaccination among their employees.

For these reasons, the federal questions here are much like the federal question presented in *Grable*, which properly invoked the trial court's subject-matter jurisdiction. In *Grable*, the IRS seized real property belonging to a tax-delinquent company and transferred that property to a third-

19

party purchaser in a quitclaim sale. *Id*. at 310-11. The tax-delinquent company then filed a quiet-title action in state court against the third-party purchaser, alleging that the IRS seized the property without complying with the precise notice requirements under federal law. *Id*. at 311. On its face, the complaint alleged a simple quiet-title claim that state courts routinely resolve. But a substantial federal question embedded that claim: whether the IRS adhered to federal law and gave the tax-delinquent company proper notice. *Id*. at 314-15. The Supreme Court recognized that the "meaning of the federal tax provision is an important issue of federal law" and that a court's interpretation of that provision would affect the IRS's ability to "satisfy its claims from the property of delinquents." *Id*. at 315. Thus, the Court held that the quiet-title action "sensibly belongs in federal court" and affirmed the Sixth Circuit's decision, which affirmed the trial court's denial of the tax-delinquent company's motion to remand. *Id*.

This case, which turns on whether the FDA has followed federal law and properly approved COVID vaccines, also "sensibly belongs in federal court." *Id*. At bottom, Plaintiffs cannot resist a federal forum while simultaneously raising substantial federal questions. Taken at their word, Plaintiffs present serious questions about the federal government's approval of Pfizer's COVID vaccine, which they claim "still has not gone through normal FDA testing," describe the approval process as a "sick political ploy to try and further coerce leery healthcare workers and Americans," and accuse the "U.S. government and Defendants are lying about the Pfizer approval." (Compl., Dkt. #13 at ¶¶ 320-21, 339.) A federal court should resolve these substantial questions.

## IV. **CONCLUSION**

For these reasons, the Mercy Defendants hereby request that the Court enter an Order denying Plaintiffs' Motion for Remand.

Respectfully submitted,

 */s/ James E. Burke*
William A. Posey (0021821)
James E. Burke (0032731)
Bryce J. Yoder (0089816)
Amanda B. Stubblefield (0097696)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH  45202
Telephone: 513.579.6400
Fax: 513.579.6457
wposey@kmklaw.com
jburke@kmklaw.com
byoder@kmklaw.com
astubblefield@kmklaw.com

and

Thomas J. Wiencek
VP/Associate General Counsel
Bon Secours Mercy Health
388 S. Main Street, Suite 500
Akron, Ohio  44311
Telephone: 513.639.0196
TJWiencek@mercy.com

*Attorneys for Defendants Mercy Health
Cincinnati LLC; Mercy Health – Anderson
Hospital LLC; Mercy Health – West Hospital
LLC; Mercy Health Physicians Cincinnati LLC;
and Jewish Hospital, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been electronically filed on this Court's CM/ECF system and served by electronic mail this 27th day of September, 2021, upon the following:

> Glenn D. Feagan
> Deters Law
> 5247 Madison Pike
> Independence, KY 41051
> gfeagan@feaganlaw.com
>
> *Attorney for Plaintiffs*

*/s/ James E. Burke*
James E. Burke
