UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HARSMAN, *et al.*, | : | |
| | : | Case No. 1:21-cv-00597 |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI CHILDREN'S | : | |
| HOSPITAL MEDICAL CENTER, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

As the Sixth Circuit recently noted, "we are not living in normal times; we are living in pandemic times." *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 925 (2020).[1] Faced with the flurry of litigation spawned by COVID-19, "[c]ourt[s have been] tasked with identifying precedent in unprecedented times." *Tabernacle Baptist Church v. Beshear*, 459 F. Supp. 3d 847, 854 (E.D. Ky. 2020). For more than 100 years, however, vaccine mandates such as those implemented by defendants have been legal. *See Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Virtually every court that has taken up a challenge to required COVID-19 vaccinations – including the Eastern District of Kentucky in a challenge to St. Elizabeth Medical Center's vaccine mandate, just last week – has followed suit. *See Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 2:21-cv-00105, Mem. Order (E.D. Ky. Sept. 24, 2021) ("*Beckerich Kentucky* Order") (Ex. 1). *See also Bridges v. Houston Methodist Hosp.*, No. H-21-01774, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12,

---

[1]   *rev'd on other grounds*, __ U.S. __, 141 S. Ct. 1262 (2021).

2021) (denying TRO to plaintiffs who objected to hospital's vaccine mandate); *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021) (denying TRO to plaintiffs who objected to university's vaccine mandate); *Wade v. University of Connecticut*, No. 3:21-cv-924, 2021 WL 3616035, 2021 U.S. Dist. LEXIS 153565 (D. Conn. Aug. 16, 2021) (dismissing vaccine mandate challenge for lack of jurisdiction); *Harris v. University of Massachusetts*, No. 21-cv-11244, 2021 U.S. Dist. LEXIS 162444 (D. Mass. Aug. 27, 2021) (denying preliminary injunction to plaintiffs who objected to university's vaccine mandate); *State Police Ass'n v. Massachusetts*, No. 2184-CV-02117, Mem. & Order Pl.'s Mot. Prelim. Inj., (Mass. Sup. Ct. Sept. 23, 2021) (Ex. 2) (denying motion to enjoin implementation of vaccine mandate for all Massachusetts Executive Branch employees); *Maniscalco v. New York City Dep't of Educ.*, No. 1:21-cv-05055, Mem. Decision & Order, Doc. 16 (E.D.N.Y. Sept. 23, 2021) (denying preliminary injunction to plaintiff-employees challenging New York City Department of Education's vaccine mandate because, among other things, plaintiffs had not shown likelihood of success on the merits) (Ex. 3).

Defendants (and indeed the Court) are in an anomalous position.[2] Plaintiffs' "Verified Complaint" is an undisciplined, incongruous, unsubstantiated rant appropriate for a blog, not a court of law. Their three-page motion, seeking a temporary restraining order and/or preliminary injunction, does little more than recite the Rule 65 legal standard. Plaintiffs do not identify which of their dozens of "claims" entitle them to emergency relief. They do not cite a single case supporting their request. In short, they do nothing more than direct the Healthcare Systems and the Court to the

---

[2] Defendants comprise Cincinnati Children's Hospital Medical Center ("CCHMC"); The Christ Hospital and The Christ Hospital Physicians, LLC ("TCHHN"); TriHealth, Inc., TriHealth G, LLC, d/b/a TriHealth Physician Partners and Group Health Physician Partners, Bethesda Hospital, Inc., Bethesda North and Good Samaritan Hospital ("TriHealth"); UC Health, LLC, University of Cincinnati Medical Center, LLC and University of Cincinnati Physicians Company, LLC; and Mercy Health Cincinnati, LLC, Mercy Health – Anderson Hospital LLC, Mercy Health – West Hospital LLC, Mercy Health Physicians Cincinnati LLC and The Jewish Hospital, LLC, d/b/a The Jewish Hospital – Mercy Health ("Mercy") (collectively, the "Healthcare Systems").

2

"Verified Complaint" (that ***their counsel*** verified ***weeks*** before it was filed) and a handful of fact-free affidavits, and expect them to figure it out for them.

It is Plaintiffs' burden to show that they are entitled to relief by clear and convincing evidence. They haven't even tried. The Court should not shift the burden to the Healthcare Systems to determine what Plaintiffs' arguments are. Nor does the Court need to take on that burden.[3] The Court can deny the motion for TRO and preliminary injunction on that basis alone. *Essroc v. Cement Corp. v. CPRIN, Inc.,* 593 F. Supp. 2d 962, 968 (W.D. Mich. 2008) ("The failure to show ***any*** likelihood of success on the merits – let alone a strong or substantial likelihood of success – is enough, by itself, to warrant denial of preliminary injunction relief.") (emphasis added).

This is Plaintiffs' seventh attempt to secure an order restraining the Healthcare Systems from imposing vaccine mandates upon its employees. Plaintiffs' attempt to transform private, non-profit employers into state actors who are violating their constitutional rights should be denied. They have (once again) fallen woefully short of demonstrating their entitlement to a preliminary injunction – a drastic remedy reserved for circumstances that clearly demand such extraordinary relief.

## II.     **STATEMENT OF FACTS**

The Court is clearly aware of the public health crisis caused by COVID-19. Despite the now widespread availability of vaccines developed by Pfizer, Moderna, and Johnson & Johnson, there has been another surge of COVID-19 over the past several months. Since June, the Delta variant – an exceptionally contagious variant of COVID-19 – has caused a rapid increase in positive cases, hospitalizations, and deaths throughout Ohio.

---

[3] The Court should not countenance any attempt by Plaintiffs to add facts, theories or other information on reply. They have had multiple opportunities over the past month to file a proper motion and haven't made any effort to do so.

When updating Ohioans about the state of the COVID-19 virus in Ohio on September 21, 2021, Governor Mike DeWine reported that "[t]he bottom line is that we're seeing our highest levels ever of hospitalizations among those under 50 years old. Those who are getting very sick, being hospitalized and dying of COVID are getting younger and younger. And it is because they are not vaccinated." Ohio Dep't of Health, *COVID-19 Update for Ohio*, Sept. 21, 2021, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/news-releases-news-you-can-use/covid-19-update-09-21-21 (last visited Sept. 24, 2021). As of September 21, Ohio had "459 newly-reported hospitalizations, the highest number of new hospitalizations since January." *Id.* On September 23, Ohio reported 7,475 new cases, 300 new hospitalizations (including 24 ICU admissions) in the previous 24 hours. https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/current-trends (last visited Sept. 24, 2021).

Armed with just two sentences of conclusory argument, a lawyer-verified complaint and conspiracy theories, Plaintiffs ask this Court to substitute its judgment for the judgment of the medical professionals leading the Healthcare Systems, as well as the judgment of at least 18 states, territories and cities; the federal government; OSHA, and over 50 governing healthcare organizations that either require or encourage healthcare employers to require COVID-19 vaccination among their employees.[4] As Plaintiffs themselves note, "The American Hospital Association, the American Medical Association and the Ohio Hospital Association recently advised healthcare employers require workers be vaccinated against Covid." Doc. 13, PAGEID 741 at ¶ 11.

---

[4] *Joint Statement in Support of COVID-19 Vaccine Mandates for All Workers in Health and Long-Term Care*, https://www.acponline.org/acp_policy/statements/joint_statement_covid_vaccine_mandate_2021.pdf (last visited Sept. 24, 2021). *See also* American Med. Ass'n, *AMA in support of COVID-19 vaccine mandates for health care workers*, July 26, 2021, https://www.ama-assn.org/press-center/press-releases/ama-support-covid-19-vaccine-mandates-health-care-workers (last visited on July 26, 2021).

The idea that a healthcare organization would require its employees to be vaccinated against contagious diseases is not new. Indeed, most already require their employees to have other vaccines, including those for measles, mumps, rubella, varicella (chicken pox) and influenza. *See George v. Kankakee County College*, No. 14-2160, 2014 U.S. Dist. LEXIS 161379, at *9, 17 (C.D. Ill. Oct. 27, 2014) (recommending dismissal of challenge to hospital vaccine policy, noting that "this Court cannot conceive of a reason that a hospital, even when behaving as a state actor, could not impose a similar requirement [to receive vaccinations] on its employees").

### III. PROCEDURAL POSTURE

On August 23, 2021, Plaintiffs' counsel filed six individual, purportedly verified class action complaints against each Healthcare System and St. Elizabeth Medical Center, Inc./Summit Medical Group, Inc., d/b/a St. Elizabeth Physicians ("St. Elizabeth").[5] Two days later, they filed a separate complaint alleging antitrust claims against the Healthcare Systems and St. Elizabeth.[6] After the Hamilton County Court of Common Pleas denied the request for TRO in the *Aldridge* case,[7] and the U.S. District Courts for the Southern District of Ohio and Eastern District of Kentucky set expedited briefing and hearing schedules in the two *Beckerich* cases, Plaintiffs' counsel voluntarily dismissed all of their complaints, noting their "inten[t] to refile."

---

[5] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, Case No. 2:21-cv-00100 (E.D. Ky.) (removed from Boone Cnty. Cir. Ct.); *Beier v. UC Health, LLC*, Case No. 1:21-cv-00551 (S.D. Ohio) (removed from Hamilton Cnty. C.P.); *Aldridge v. Mercy Health Cincinnati, LLC*, Case No. A2102965 (Hamilton Cnty. C.P.); *Alexander v. Cincinnati Children's Hosp. Med. Ctr.*, Case No. 1:21-cv-00545 (S.D. Ohio) (removed from Hamilton Cnty. C.P.); *Allen v. TriHealth, Inc.*, Case No. A2102964 (Hamilton Cnty. C.P.); and *Durrough v. Christ Hosp.*, Case No. 1:21-cv-00549 (S.D. Ohio) (removed from Hamilton Cnty. C.P.).

[6] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, Case No. 1:21-cv-00548 (S.D. Ohio).

[7] *Aldridge*, No. A2102965, Entry Denying Pls.' Mot. Temp. Restraining Order, Aug. 27, 2021 (Ex. 4).

On September 3, 2021, the same plaintiffs (and counsel) refiled against the Healthcare Systems and St. Elizabeth collectively (but only as to their antitrust claims against St. Elizabeth) in the Southern District of Ohio,[8] and also against St. Elizabeth in the Eastern District of Kentucky.[9] Within hours of this Court holding a Rule 65 telephone conference in *Beckerich Ohio* on September 10, Plaintiffs' counsel again voluntarily dismissed Plaintiffs' complaint. Thereafter, in a public broadcast explaining the dismissal to their clients, Plaintiffs' counsel attacked this Court and admitted to judge-shopping. They also pledged to refile – again. *See* https://www.youtube.com/watch?v=Orxmwq2b5mk (last visited Sept. 26, 2021). True to their word, on September 14, Plaintiffs' counsel refiled in the Hamilton County Court of Common Pleas.[10] On September 17, Mercy removed *Harsman* to this Court; all of the other Healthcare Systems consented to the removal.

Plaintiffs' latest complaint remains devoid of any factual allegations or legal theories supporting a claim for relief. Indeed, Plaintiffs fail to allege a single fact about themselves. They have not specifically alleged that they are employees of one of the Healthcare Systems, whether they have already been vaccinated or if they have applied for or been granted an exemption under the Healthcare Systems' policies. Nor has any plaintiff verified the contents of the Complaint under oath as required by Rule 65(b). Instead, ***their counsel*** verified the 75-page, 570-paragraph manifesto,[11] which is not only rife with conspiracy theories and untoward criticisms of the

---

[8] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 1:21-cv-00576 (S.D. Ohio) ("*Beckerich Ohio*").

[9] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 2:21-cv-00195 (E.D. Ky.).

[10] *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, No. A2103207 (Hamilton Cnty. C.P.).

[11] Plaintiffs' counsel did not verify the current complaint, which has two sets of paragraphs numbered 1 through 13. Rather, his signature and verification page from one of the August 23, 2021 complaints was appended thereto.

6

government, the media and political figures in violation of Fed. R. Civ. P. 8, but contains numerous demonstrably false allegations.

Plaintiffs have not stated a claim for relief, let alone a substantial likelihood of success on the merits. Plaintiffs also cannot demonstrate irreparable harm or that the public and others will not be harmed by any injunction. COVID-19 continues to claim lives every day. Any harm to employees who refuse a vaccine would be monetary and, in the unlikely event that they could state a claim, recoverable. On the other hand, what is truly irreparable are the lives that may be lost if the virus continues to spread.

### IV. <u>ARGUMENT</u>

Plaintiffs seek "an extraordinary remedy invoking the exercise of very far-reaching power, which is to be applied only in limited circumstances which clearly demand it." *Ashraf v. Boat*, No. 1:13-cv-00533, 2013 WL 4017642, 2013 U.S. Dist. LEXIS 110386, at *6 (S.D. Ohio Aug. 6, 2013) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). An "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

When determining whether to grant a temporary restraining order or preliminary injunction, a district court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020); *see also City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (*per curiam*) (*en banc*).

A.   **Plaintiffs' Request for a Temporary Restraining Order Is Moot.**

Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 14) must be denied for the simple reason that Plaintiffs' seek injunctive relief on the basis that an "FDA unapproved experimental vaccine" cannot be mandated. Doc. 13, PAGEID 805-06 at ¶¶ 547-551.  More than a month ago, on August 23, 2021, the FDA approved the Pfizer-BioNTech vaccine.  Plaintiffs' claim that it is unapproved or experimental is simply not true.  As a result, the FDA's approval of the vaccine moots Plaintiffs' request for a TRO.  *See Thompson v. DeWine*, No. 21-3514, 2021 U.S. App. LEXIS 22342, at *5-6 (6th Cir. July 28, 2021) (holding that plaintiff's request for injunctive and declaratory relief to place certain voter initiatives on the 2020 was moot because the election had concluded).

B.   **Plaintiffs Have Not Set Forth Sufficient Evidence To Establish Standing.**

As noted, Plaintiffs fail to assert specific facts with respect to whether they are vaccinated, whether they have requested an exemption and what harm they have or will suffer.  Indeed, Plaintiffs do not even allege that any are employed by the Healthcare Systems.  Nor do they allege that any of them requested or have been denied an exemption or reasonable accommodation.

> The U.S. Constitution confines the federal judiciary's power to "Cases" and "Controversies." U.S. Const. Art. III, § 2.  For a case or controversy to exist, a plaintiff must have standing – an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress.

*Klaassen v. Trustees of Indiana Univ.*, No. 1:21-CV-238, 2021 U.S. Dist. LEXIS 133300, at *36 (N.D. Ind. July 18, 2021) (citing *Uzuegbunam v. Preczewski*, __ U.S. __, 141 S. Ct. 792, 797 (2021); *Spokeo*, *Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016)).  A justiciable controversy in the vaccine mandate context only exists if plaintiffs do not qualify for exemptions.

*Id.* at *36-37. Having failed to plead that they are ineligible for an exemption, Plaintiffs have further failed to demonstrate their standing and that a justiciable case or controversy exists.

Nor is the Complaint verified by any of the Plaintiffs. In the absence of a properly verified complaint or affidavit setting forth specific facts about these Plaintiffs sufficient to show standing and the irreparable injury that they would suffer, Plaintiffs' motion must be denied. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed under penalty of perjury pursuant to 28 U.S.C. § 1746); *Wade v. University of Conn. Bd. of Trustees*, No. 3:21-cv-924, 2021 U.S. Dist. LEXIS 153565, at *21 (D. Conn. Aug. 16, 2021) (plaintiffs who were granted exemption from vaccination requirement, or failed to avail themselves of process to request exemption, had not suffered an injury the law recognizes as a basis for the right to complain in court and, therefore, did not have standing to proceed).[12]

### C. Plaintiffs' Delay In Pursuing This Action Belies the Need for Emergency Relief.

"A temporary restraining order is an emergency measure." *Sarnova HC, LLC v. Reetz*, No. 2:21-cv-00601, 2021 WL 1257081, 2021 U.S. Dist. LEXIS 65527, at *7 (S.D. Ohio Apr. 5, 2021). "The first factor the Court must consider in determining whether to grant [plaintiffs'] request for emergency relief is the immediacy of the harm [they] face[]." *Id.* at *9. Plaintiffs claim that the announcement of the vaccine mandate occurred on August 5, 2021. Doc. 13 at PAGEID 740, ¶ 1. They claim it required them to get the first shot by September 1, 2021. *Id.* at PAGEID 741, ¶ 8. Yet, after multiple false starts that began more than a month ago, they did not file this current action until September 14, 2021.

---

[12] As Judge Jennifer L. Branch held in *Aldridge*, affidavits that contain opinions and statements of fact not based on the affiant's own personal knowledge, information or belief, are insufficient for purposes of obtaining an injunction. *See* Ex. 4.

9

Plaintiff's delay in filing this action demonstrates that there is no basis for an emergency temporary restraining order. As detailed above, Plaintiffs' counsel has filed and dismissed six nearly identical lawsuits. Their lack of diligence in pursing these claims precludes them now from an emergency temporary restraining order. *See NACCO Indus. v. Applica, Inc.*, No. 1:06-cv-3002, 2006 U.S. Dist. LEXIS 91940, *29, n.12 (N.D. Ohio Dec. 20, 2006) ("If their federal claims were truly urgent, rather than a try at gamesmanship, the case could have been prepared and filed at least a number of weeks ago. Here, Plaintiffs delayed for weeks, only to file a TRO 9 calendar days before the scheduled meeting.").

> **D. Plaintiffs Have Not Asserted a Constitutional Violation Against the Healthcare Systems, Which are Private Entities.**

Recognizing that they do not have any legitimate basis for a TRO and cannot establish irreparable harm or that the injunction will not cause harm to others, Plaintiffs' three-page motion for a temporary restraining order or preliminary injunction appears to rely solely on a single sentence: the conclusory assertion that "constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied." Doc. 14, PAGEID 860. Because there are no state actors in this case, however, there cannot be any constitutional violations. *See Beckerich Kentucky* Order at 5*; Reed v. Millennia Hous. Mgmt., Ltd.*, No. 5:18-CV-01711, 2019 U.S. Dist. LEXIS 195902 (N.D. Ohio Nov. 12, 2019) (rights and liberties under Ohio constitution only apply to governmental entities); *Gueye v. UC Health*, No. 1:13-cv-673, 2014 U.S. Dist. LEXIS 40227 (S.D. Ohio Mar. 26, 2014) ("the receipt of Medicare or Medicaid payment and the fact that a defendant hospital was subject to government regulation is insufficient to establish state action").

Yet, even if the Defendants were state actors, as the Supreme Court held 115 years ago and the Seventh Circuit just reiterated, there is no fundamental right to refuse vaccines. *See Jacobson*

*v. Massachusetts*, 197 U.S. 11 (1905); *Klaassen*, 2021 WL 3281209, 2021 U.S. App. LEXIS 22785 at *2 ("Given *Jacobson* . . . which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2.") In any event, a private hospital is not a state actor. There cannot, therefore, be any constitutional causes of action against the Healthcare Systems. *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608 (6th Cir. 2018).

Because non-existent constitutional violations are the *only* basis on which Plaintiffs predicate their entitlement to a TRO, their motion should be denied.

### E. Plaintiffs Have Failed to Prove by Any (Let Alone Clear and Convincing) Evidence That Any of the Required Elements for a Restraining Order are Present Here.

For all of the foregoing reasons, the Court may deny Plaintiffs' request for the extraordinary relief of a temporary restraining order. Those reasons aside, Plaintiffs' motion must still be denied because they have failed to establish by clear and convincing (or any admissible) evidence that a restraining order is warranted under any of the four factors governing injunctive relief. An "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573. *See also Hartman v. Acton*, No. 2:20-CV-1952, 2020 U.S. Dist. LEXIS 72068, at *5 (S.D. Ohio Apr. 21, 2020) ("[T]he burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one" since the party seeking "the injunction must establish its case by clear and convincing evidence.").

#### 1. Plaintiffs are Not Substantially Likely to Succeed on the Merits of Their Claims.

Under the first factor, the Plaintiffs must establish a strong likelihood of success on the merits. *Memphis A. Philip Randolph Inst.*, 978 F.3d at 385. This factor is often determinative.

*Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). "[W]hen the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors." *Armstead v. Baldwin*, No. 2:19-cv-4857, 2020 U.S. Dist. LEXIS 5918, *5 (S.D. Ohio Jan. 14, 2020). "Failure to do so is reversible error." *Id.* Furthermore, to establish the required "strong likelihood of success on the merits," the moving party may not rely on "conjectures or conspiracies." *Beckerich Kentucky* Order at 4. This principle has obvious application here.

Plaintiffs cannot establish a substantial likelihood of success on the merits of their claims. Indeed, for many of the reasons set forth above, Plaintiffs' claims will be subject to a motion to dismiss. As previously discussed, Plaintiffs' constitutionally-based claims cannot stand. *See Beckerich Kentucky* Order at 5 ("Plaintiffs' constitutional claims cannot stand, and thus [Plaintiffs] have zero likelihood of success on the merits."). Plaintiffs' failure to allege a single factual allegation with respect to themselves or the Healthcare Systems is equally fatal to their claims. *See id.* at 7-12 (noting plaintiffs could not establish strong likelihood of success where they had not demonstrated that they requested or had been denied exemptions and, even if they had, any harm would be compensable by money damages).

Furthermore, for the bulk of their claims, Plaintiffs rely on their outdated and mistaken belief that the vaccine is experimental. Contrary to Plaintiffs' assertions, the vaccine – which has been approved by the FDA – is not experimental. Moreover, hospitals remain free to decide what safety precautions are necessary in their workplaces, including vaccination requirements. *See George v. Kankakee County College*, No. 14-2160, 2014 U.S. Dist. LEXIS 161379, at *9, 17 (C.D. Ill. Oct. 27, 2014) (recommending dismissal of complaint challenging hospital vaccine policy:

12

"this Court cannot conceive of a reason that a hospital, even when behaving as a state actor, could not impose a similar requirement [to receive vaccinations] on its employees").

Nor is anyone being forced to receive a vaccine. *See Doe v. Zucker*, No. 1:20-cv-840, 2021 U.S. Dist. LEXIS 28937, *64 (N.D.N.Y. Feb. 17, 2021) (mandatory vaccination requirement does "not force . . . consent to vaccination"). If Plaintiffs decline to be vaccinated, they are free to work elsewhere. *Bridges v. Houston Methodist Hosp.*, 2021 U.S. Dist. LEXIS 110382 at *2 (S.D. Tex. June 12, 2021) (holding that policy requiring employee to receive COVID-19 vaccination was not coercive because employee "can freely choose to accept or refuse a COVID-19 vaccine . . . . if she refuses, she will simply need to work somewhere else"); *Klaassen*, 7 F.4th at 593 (upholding denial of injunction against university's COVID-19 vaccination requirement, finding that people who do not want to be vaccinated may go elsewhere).

Yet, even if Plaintiffs could survive a motion to dismiss, as previously noted, courts considering similar claims have denied injunctive relief. *Bridges*, 2021 U.S. Dist. LEXIS 110382 at *6; *Norris v. Stanley*, No. 1:21-cv-756, 2021 U.S. Dist. LEXIS 168444 (W.D. Mich. Aug. 31, 2021) (denying motion for TRO where plaintiff faced with choice between vaccination and termination failed to show she was substantially likely to succeed on the merits or face an irreparable injury not compensable by monetary damages); *Klaassen*, 2021 U.S. Dist. LEXIS 133300 at *124-25 (denying injunctive relief to students required to receive COVID-19 vaccine while in EUA status); *Harris*, 2021 U.S. Dist. LEXIS 162444 (denying preliminary injunction of vaccine mandate at university); *Valdez v. Grisham*, No. 21-cv-783, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021); *America's Frontline Doctors v. Wilcox*, No. EDCV 21-1243, 2021 U.S. Dist. LEXIS 144477 (C.D. Ca. July 30, 2021); *Aldridge v. Mercy Health Cincinnati, LLC*, No. A2101965 (Hamilton Cnty. C.P. Aug. 29, 2021) (denying TRO in original case against Mercy).

13

### 2. Plaintiffs Will Not Suffer Irreparable Harm if Their Request for Relief is Not Granted.

Even if Plaintiffs could establish a substantial likelihood of success, the extraordinary remedy sought at this early stage is not appropriate because there is no irreparable harm.

In evaluating the harm that will occur depending on whether or not the stay is granted," the Sixth Circuit "generally look[s] to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Michigan Coalition of Radioactive Mat'l Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "It is important to remember," however, that

> the key word in this consideration is ***irreparable***. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility of adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958))) (emphasis original). "In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.* (citing *Wisconsin Gas Co. v. Federal Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* Moreover, "harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Plaintiffs reference "irreparable harm" in their motion and, once again, direct the Court to their "Verified Complaint" (Doc. 14 at PAGEID 860), which only contains conclusory allegations. *See* Doc. 13 at PAGEID 806, ¶ 550 (alleging they will have the irreparable injury of either "being obligated to take the vaccine or be terminated."). But merely alleging that they will suffer

"irreparable harm" is not enough. "Unsubstantiated allegations of irreparable harm are an insufficient basis upon which to grant a plaintiff injunctive relief." *London Computer Sys. v. Zillow, Inc.*, No. 1:18-cv-00696, 2020 WL 5366108, 2020 U.S. Dist. LEXIS 163398 (S.D. Ohio Sept. 8, 2020) (quoting *FirstPower Grp., LLC v. WD-40 Co.*, No. 5:17-cv-00392, 2017 WL 3034499, 2017 U.S. Dist. LEXIS 111477, at *13 (N.D. Ohio July 18, 2017)).

It is well-settled that the mere inability to work for the Healthcare Systems (and the corresponding need to find other employment) does not constitute irreparable harm. *Overstreet*, 305 F.3d at 579 ("The fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay."); *Rao v. New York City Health & Hosp. Corp.*, No. 89 Civ. 2700, 1991 U.S. Dist. LEXIS 4865, at *6 (S.D.N.Y. April 12, 1991) ("Financial distress or inability to find other employment does not establish the requisite irreparable harm, unless truly extraordinary circumstances are shown."). The United States Supreme Court has made it clear that the availability of damages prevents a plaintiff from claiming irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Plaintiffs' alleged harm – the inability to work for Healthcare Systems – does not establish immediate and irreparable harm sufficient to entitle Plaintiffs to the extraordinary remedy of a temporary restraining order or preliminary injunction. As the *Bridges* court concluded, Plaintiffs have an adequate legal remedy that precludes injunctive relief:

> Assuming that there is a substantial likelihood of success on the merits, the plaintiffs have an adequate remedy at law. If they are wrongfully terminated, the plaintiffs can sue the hospital on those grounds to recover monetary damages."

*Bridges v. Houston Methodist Hosp.*, No. H-21-1774, Order Denying Temporary Restraint (Doc. 10) ("*Bridges* Order") (S.D. Tex. June 4, 2021) (Ex. 5). *See also Norris*, 2021 U.S. Dist. LEXIS

15

168444 at *8 (no irreparable harm where vaccinate or terminate policy could be compensated with lost wages and benefits).

### 3. Restraining the Healthcare Systems Will Harm Others and Isn't in the Public Interest.

Finally, Plaintiffs do not even mention, much less attempt to address, the substantial harm and public interest factors. *See* Doc. 14. The reason why is clear – enjoining the Healthcare Systems' vaccine mandates will visit substantial harm on the tens of thousands of people who stand to benefit from more vaccinations, less disease in the community and putting an end to the COVID-19 pandemic. Indeed, both the state and federal courts have stressed the deadliness of the virus and the obvious interest in stopping its spread. *See, e.g.*, *Southwestern Ohio Basketball, Inc. v. Himes*, 2021-Ohio-415, 167 N.E.3d 1001 (12th Dist.) (reversing grant of injunctive relief arising from government shutdown orders, emphasizing the "significant danger posed by the spread" of the virus and the attendant "interest in combatting COVID-19"); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 914 Fed. Appx. 125, 129-30 (6th Cir. 2020) (staying injunction granted by district court, holding that interest in combatting COVID-19 and potential for additional infection trumped any alleged harm suffered by plaintiffs), *Beckerich*, at 16-20.

The same is true here. The potential harm to third parties and the public's interest outweigh any interest asserted by Plaintiffs and compel denial of injunctive relief in this ever-evolving pandemic. *See, e.g.*, *Altman v. Santa Clara*, 464 F. Supp. 3d 1106, 1134 (N.D. Cal. 2020) ("[T]he public's interest in controlling the spread of COVID-19 outweighs its interest in preventing the constitutional violations alleged here, especially given that Plaintiffs have failed to establish a likelihood of success on the merits."); *Bridges* Order (Ex. 5) ("The public's interest in having a hospital capable of caring for patients during a pandemic far outweighs protecting the vaccination preferences of 116 employees. The plaintiffs are not just jeopardizing their own health, they are

16

jeopardizing the health of doctors, nurses, support staff, patients and their families."); *Klaassen*, 7 F.4th 592 (denying TRO finding that students' refusal to get vaccinated, while also not complying with heightened safety precautions, "certainly impacts the public interest" by putting others at risk); *Harris*, 2021 U.S. Dist. LEXIS 162444 ("the balance of equities tips in Defendants' favor given the strong public interest here that they are promoting –preventing further spread of COVID-19 on campus, a virus which has infected and taken the lives of thousands of Massachusetts residents. Plaintiffs' requested relief here would weaken the efforts of UMass to carry out those goals. Similarly, given the public health efforts promoted by the Vaccine Policy, enjoining the continuation of same is not in the public interest."), *Beckerich Kentucky* Order at 18 ("if legislative action to prevent the spread of contagious disease must be upheld, even in spite of doubt – and in spite of individual liberties – then private action must be upheld too . . . .") (citing *Jacobson*, 197 U.S. at 35)). Because the requested injunction would impair the interests of third parties and the public at large, Plaintiffs' request for injunctive relief must be denied.

## V.     CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction must be denied.

| | |
|---|---|
| September 27, 2021 | Respectfully submitted, |
| Per Email Authorization of<br>September 27, 2021<br>*s/ Russell S. Sayre*<br>_____<br>Russell S. Sayre (OH 0047125)<br>TAFT STETTINIUS & HOLLISTER LLP<br>425 Walnut Street, Suite 1800<br>Cincinnati, Ohio 45202<br>sayre@taftlaw.com<br>(513) 381-2838<br><br>*Counsel for Defendant, Cincinnati*<br>*Children's Hospital Medical Center* | *s/ Jean Geoppinger McCoy*<br>_____<br>J. David Brittingham (OH 0061577)<br>David P. Kamp (OH 0020665)<br>Jean Geoppinger McCoy (OH 0046881)<br>Allison G. Knerr (OH 0088235)<br>DINSMORE & SHOHL LLP<br>255 East Fifth Street, Suite 1900<br>Cincinnati, Ohio 45202<br>david.brittingham@dinsmore.com<br>david.kamp@dinsmore.com<br>jean.mccoy@dinsmore.com<br>allison.knerr@dinsmore.com<br>(513) 977-8200<br><br>*Counsel for Defendants, The Christ Hospital*<br>*and The Christ Hospital Physicians, LLC* |
| Per Email Authorization of<br>September 27, 2021<br>*s/ Bradley D. McPeek*<br>_____<br>Bradley D. McPeek (OH 0071137)<br>Matthew C. Curran (OH 0077038)<br>Elizabeth M. Johnson (OH 0097894)<br>LINDHORST & DREIDAME<br>312 Walnut Street, Suite 3100<br>Cincinnati, Ohio 45202<br>bmcpeek@lindhorstlaw.com<br>(513) 421-6630<br><br>*Counsel for TriHealth, Inc., d/b/a*<br>*TriHealth Physician Partners and Group*<br>*Health Physician Partners, Bethesda*<br>*Hospital, Inc., Bethesda North and*<br>*Good Samaritan Hospital* | Per Email Authorization of<br>September 27, 2021<br>*s/ Patricia Anderson Pryor*<br>_____<br>Patricia Anderson Pryor (OH 0069545)<br>JACKSON LEWIS P.C.<br>201 East Fifth Street, 26th Floor<br>Cincinnati, Ohio 45202<br>Patricia.pryor@jacksonlewis.com<br>(513) 898-0050<br><br>*Counsel for Defendants, UC Health, LLC*<br>*University of Cincinnati Medical Center and*<br>*University of Cincinnati Physicians Co., LLC* |

Per Email Authorization of
September 27, 2021
*s/ James E. Burke*

_____
William A. Posey (OH 0021821)
James E. Burke (OH 0032731)
Bryce J. Yoder (OH 0089816)
Amanda B. Stubblefield (OH 0097696)
KEATING, MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio  45202
wposey@kmklaw.com
jburke@kmklaw.com
byoder@kmklaw.com
astubblefield@kmklaw.com
(513) 579-6400

  and

Thomas J. Wiencek, Esq.
VP/Associate General Counsel
Bon Secours Mercy Health
388 S. Main Street, Suite 500
Akron, Ohio  44311
TJWiencek@mercy.com
(513) 639-0196

*Counsel for Defendants, Mercy Health*
*Cincinnati, LLC, Bon Secours Mercy*
*Health, Inc., Mercy Health – Anderson*
*Hospital, LLC, Mercy Health West*
*Hospital, LLC, Mercy Health*
*Physicians Cincinnati LLC and*
*The Jewish Hospital, LLC*

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing pleading was served, via the Court's CM/ECF system, on:

      Glenn D. Feagan, Esq.
      DETERS LAW
      5247 Madison Pike
      Independence, Kentucky 41051
      gfeagen@feaganlaw.com

        and

      Alan J. Statman, Esq.
      STATMAN, HARRIS & EYRICH, LLC
      35 East Seventh Street, Suite 315
      Cincinnati, Ohio 45202
      ajstatman@statmanharris.com

this 27th day of September, 2021.

                      *s/ Jean Geoppinger McCoy*
                      _____
                      Jean Geoppinger McCoy