UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY HARSMAN, *et al.*, | : | Case No. 1:21-cv-597 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| CINCINNATI CHILDREN'S | : | |
| HOSPITAL MEDICAL CENTER, *et al*., | : | |
| | : | |
| Defendants. | : | |

### ORDER DENYING PLAINTIFFS' MOTION
### FOR A TEMPORARY RESTRAINING ORDER

This civil case is before the Court on Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 14), and Defendants'[1] responsive memoranda (Docs. 34, 35, 37, and 39). Plaintiffs seek an emergency order restraining Defendants from requiring Plaintiffs to be vaccinated for COVID-19 prior to October 1, 2021,[2] and from taking any adverse employment action against Plaintiffs for failing to be vaccinated or refusing to disclose their vaccination status.

---

[1] Defendants are five Cincinnati area hospital systems comprising Cincinnati Children's Hospital Medical Center ("CCHMC"); The Christ Hospital and The Christ Hospital Physicians, LLC ("TCHHN"); TriHealth, Inc., TriHealth G, LLC, d/b/a TriHealth Physician Partners and Group Health Physician Partners, Bethesda Hospital, Inc., Bethesda North and Good Samaritan Hospital ("TriHealth"); UC Health, LLC, University of Cincinnati Medical Center, LLC and University of Cincinnati Physicians Company, LLC ("UC"); and Mercy Health Cincinnati, LLC, Mercy Health – Anderson Hospital LLC, Mercy Health – West Hospital LLC, Mercy Health Physicians Cincinnati LLC and The Jewish Hospital, LLC, d/b/a The Jewish Hospital – Mercy Health ("Mercy") (collectively, "Defendants").

[2] October 1, 2021, which applies to the TCHHN and UC Defendants, is the earliest vaccination deadline. The other Defendants have moved back their deadlines. TriHealth Defendants will require vaccination by October 31, CCHMC by November 1, and Mercy by December 1, 2021.

## I. BACKGROUND

The factual background, though stated in a remarkable 570-paragraph complaint, is straightforward in this case. (Doc. 13). On August 5, 2021, Defendants, five of the major healthcare systems in the Cincinnati area, announced vaccine mandates for all of their employees to combat the COVID-19 pandemic. The specific details of each Defendant's mandate vary, but the general thrust is that all of Defendants' employees would be required get a COVID-19 vaccine or else qualify for a medical or religious exemption. (*Id*. at 9, ¶ 1). Plaintiffs, who are presumably healthcare workers for the major healthcare systems, oppose the vaccine mandate. (*See generally, id*.).[3]

The procedural background is more tortuous. On August 23, 2021, Plaintiffs' counsel filed separate class action complaints against all five of the Defendants here,[4] and one against Kentucky-based healthcare system St. Elizabeth Medical Center and Summit Medical Group, d/b/a St. Elizabeth Physicians ("St. Elizabeth's").[5] On August 25, 2021, Plaintiffs also filed a complaint in this Court alleging federal antitrust claims against

---

[3] Plaintiffs do not actually allege that they are employees of the Defendants in their complaint or, indeed, any facts about themselves. Nor is the class definition limited to employees of the Defendants. (Doc. 13 at ¶ 6).

[4] *Aldridge v. Mercy Health Cincinnati, LLC*, Case No. A2102965 (Hamilton Cnty. C.P.); *Alexander v. Cincinnati Children's Hosp. Med. Ctr.*, Case No. 1:21-cv-00545 (S.D. Ohio) (removed from Hamilton Cnty. C.P.); *Allen v. TriHealth, Inc.*, Case No. A2102964 (Hamilton Cnty. C.P.); *Durrough v. Christ Hosp.*, Case No. 1:21-cv-00549 (S.D. Ohio) (removed from Hamilton Cnty. C.P.); and *Beier v. UC Health, LLC*, Case No. 1:21-cv-00551 (S.D. Ohio) (removed from Hamilton Cnty. C.P.).

[5] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, Case No. 2:21-cv-00100 (E.D. Ky.) (removed from Boone Cnty. Cir. Ct.).

Defendants and St. Elizabeth's.[6] Over the next few days, UC, TriHealth, and CCHMC each removed their cases to federal court. The case against the Mercy Defendants remained in the Hamilton County Court of Common Pleas, where, on August 27, 2021, Judge Jennifer Branch denied a request for a temporary restraining order.[7] Two days later, Plaintiffs' counsel voluntarily dismissed all of the complaints they had filed in all three courts—state court, this Court, and the federal court in Northern Kentucky.

Plaintiffs' counsel reappeared on September 3, 2021. They again filed a complaint against St. Elizabeth's in the federal district court for the Eastern District of Kentucky.[8] And in this Court, they filed another class action complaint against all of the present Defendants and St. Elizabeth's (but only alleged federal antitrust claims against St. Elizabeth's).[9] On September 10, 2021, this Court conferred with defense counsel and Plaintiffs' counsel in a Rule 65 teleconference. Later that day, Plaintiffs' counsel voluntarily dismissed their case in this Court a second time. The case against St. Elizabeth's in Kentucky carried on, however. On September 24, 2021, in a thoughtful and well-reasoned Order, Judge Bunning denied injunctive relief to the Plaintiffs. *Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027 (E.D. Ky. Sept. 24, 2021).

---

[6] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, Case No. 1:21-cv-00548 (S.D. Ohio).

[7] *Aldridge*, No. A2102965, Entry Denying Pls.' Mot. Temp. Restraining Order, Aug. 27, 2021.

[8] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 2:21-cv-00195 (E.D. Ky.).

[9] *Beckerich v. St. Elizabeth Med. Ctr., Inc.*, No. 1:21-cv-00576 (S.D. Ohio).

Finally, on September 14, 2021, Plaintiffs filed the complaint in this this case. Plaintiffs originally sued in Hamilton County, but Defendants removed on September 17, 2021. (Doc. 1). Though Plaintiffs challenged removal in a motion for remand (Doc. 21), they abandoned that motion on the day their reply brief was due. (Doc. 42). Now, after keeping Defendants and this Court in limbo for nearly a month, Plaintiffs and their counsel are back where they started.

Just as before, Plaintiffs ask the Court to issue a temporary restraining order or a preliminary injunction. (Doc. 14). Plaintiffs foresee that they will face adverse employment action if they refuse to comply with Defendants' mandates. (*Id*.) They ask the Court to enjoin Defendants from requiring Plaintiffs to be vaccinated by Defendants' deadline, and from taking any adverse employment actions against Plaintiffs for their non-compliance. (*Id.*). For the reasons below, and those well-stated in Judge Bunning's Order, the Court **DENIES** Plaintiffs' request.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 empowers district courts to issue temporary restraining orders or preliminary injunctions "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). The standards for obtaining a temporary restraining order or a preliminary injunction are the same. *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007). Courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others;

4

and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc). In the Sixth Circuit, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020).

A temporary restraining order or a preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, a party seeking an "injunction must establish its case by clear and convincing evidence." *Honeywell, Inc. v. Brewer–Garrett Co.*, 145 F.3d 1331 (6th Cir.1998).

### III. ANALYSIS

**1.    Likelihood of Success on the Merits**

The first factor asks if "the movant has a strong likelihood of success on the merits." *City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430. This factor is often determinative. *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). In the Sixth Circuit, this factor is so important that "a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). To establish a likelihood of success, a movant "need not prove his case in full," but he "must show more than a mere possibility of success." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012). The "proof required for the plaintiff to obtain a preliminary injunction is

5

much more stringent than the proof required to survive a summary judgment motion, for example." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Here, Plaintiffs have not established that any of their claims are likely to succeed. They haven't even tried. In their motion, Plaintiffs correctly cite the legal standard for injunctive relief, but they never connect the standard to any specific factual allegations from their complaint. Instead, Plaintiffs invite the Court to see for itself "[t]he reasons for this Motion [as] detailed in the attached Verified Complaint and Exhibits." (Doc. 13 at 2). However, even if the Court were inclined to accept that invitation, the complaint does not establish that success on any of its claims would be likely. For example, the complaint alleges violations of Ohio law based on disability and religious beliefs. (Doc. 13 at 56, ¶¶ 431–36; 57, ¶¶ 437–44). But, in assessing Plaintiffs' likelihood of success on these claims, the Court is left to wonder what disability Plaintiffs allegedly have, or how Plaintiffs account for the *hundreds* of religious and medical exemptions Defendants have granted, including those of some of the named Plaintiffs and affiants.[10] The Court has waded through the entire complaint, probing the seemingly insurmountable obstacles to Plaintiffs' likelihood of success of *any* of their claims, but the Court need not have done so. As the law provides, "[t]he district court and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021). Instead, "the substantial subsidy of litigation …

---

[10] *E.g.*, Hanlon-Bremer Decl. (Doc. 37-1 at 3, ¶ 12) (TriHealth has granted 88 medical and 481 religious exemptions), Hutchins Decl. (Doc. 39-1 at 2, ¶ 10) (TCHHN has granted 104 medical and 348 religious exemptions); Crandell Decl. (Doc. 33-1 at 2, ¶ 6) (UC has granted 750 undifferentiated exemptions).

should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

The only basis for injunctive relief that appears on the face of the motion is "[c]onstitutional violations." (Doc. 14 at 2). Plaintiffs do not disclose what constitutional provision, or even which constitution, is allegedly violated, but, in this case, it does not matter. As Judge Bunning capably explained deciding a substantially identical motion:

> [A] well settled principle of constitutional law is that there exists "a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not." . . . Because of that principle, generally known as the state action doctrine, the Court sees Plaintiffs' constitutional assertions as bearing more on their likelihood of success than on the irreparable harm factor. Put simply, without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand, and thus have *zero* likelihood of success on the merits.

*Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297 (2001)) (emphasis supplied); *accord Haddox v. Moreland*, No. 95CA20, 1996 WL 451361, at *1 (Ohio Ct. App. Aug. 5, 1996) ("Generally, individual rights and liberties protected by the United States and Ohio Constitutions, such as the right to due process, apply only to actions of governmental entities.") (citing *State ex rel. Howard v. Ferreri*, 70 Ohio St. 3d 587, 1994-Ohio-130, 639 N.E.2d 1189).

Because Plaintiffs cannot establish that Defendants are state actors, Plaintiffs' likelihood of successfully proving "constitutional violations" is zero. But even if Defendants were state actors, the overwhelming majority of courts to consider vaccine mandates have found them constitutionally sound. In 1905, the Supreme Court of the United States upheld a municipal vaccine mandate authorized by Massachusetts law. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). The Court unequivocally held that the mandate did not offend the Constitution:

> [T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. This court has more than once recognized it as a fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be, made, so far as natural persons are concerned.

*Id.* at 12; *see also Zucht v. King*, 260 U.S. 174, 176 (1922) (it is "settled that it is within the police power of a state to provide for compulsory vaccination"); *Klaassen v. Trs. of Indiana*, 7 F.4th 592, 594 (7th Cir. 2021) (affirming that the Fourteenth Amendment permits Indiana University to require its students to be vaccinated to protect the public health of its students, faculty, and staff); *Norris v. Stanley*, No. 1:21-CV-756, 2021 WL

8

3891615, at *1 (W.D. Mich. Aug. 31, 2021) (denying TRO to block university employer's vaccine requirement because plaintiff could not establish likelihood of success on her constitutional claims).

### 2. Irreparable Harm

The Court is obligated to deny injunctive relief based on Plaintiffs' unlikelihood of success alone. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). For the sake of completeness, however, the Court will analyze the remaining factors.

The next factor a court considers when deciding whether to grant injunctive relief is irreparable harm. The Sixth Circuit considers irreparable harm "indispensable" such that "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *Id.* A harm is "irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). For that reason, loss of employment is not an irreparable injury. *Overstreet*, 305 F.3d at 578–79; *Aluminum Workers Int'l Union, AFL-CIO, Loc. Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982). Finally, the irreparable injury must be "certain

9

and immediate, not speculative or theoretical." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020).

In this case, Plaintiffs assert they will "suffer immediate and irreparable injury, loss, and damage" as a result of "loss to their careers, reputations, privacy, health, and face bankruptcy, foreclosure, and other losses." (Doc. 14 at 2). Threats to Plaintiffs' "careers," "reputations," and the risk of "bankruptcy" or "foreclosure" are quintessentially compensable injuries. They are not irreparable. As for the threat to Plaintiffs' "privacy" or "health," Plaintiffs avoid these issues by refusing to comply with the mandate and accepting the resulting employment action. Again, Judge Bunning frames the issue concisely:

> Here, no Plaintiff is being imprisoned and vaccinated against his or her will . . . . Rather, these Plaintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice. Even if they believe the condition or the consequences are wrong, the law affords them an avenue of recourse—and that avenue is not injunctive relief on this record.

*Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021). Injuries that Plaintiffs elected to sustain cannot be irreparable. Accordingly, Plaintiffs have failed to show that they face irreparable injury.

### 3. Harm to Others and the Public Interest

Whether an injunction would cause substantial harm to others and whether an injunction would serve the public interest may be discussed together because, in this case, harm to non-parties is the same as harm to the public. Weighing these factors against (1) a movant's likelihood of success on the merits, and (2) the threat of irreparable harm,

10

is known as "balancing equities." *Entm't Prods., Inc. v. Shelby Cnty.*, 588 F.3d 372, 395 (6th Cir. 2009). Here, once again, Plaintiffs' motion offers no argument. Regardless, there is no question that balancing the equities requires the Court to deny Plaintiffs' motion. Denying injunctive relief serves the public's interest in combating COVID-19, at an infinitesimally small risk to Plaintiffs' health or liberty. The Court once again adopts Judge Bunning's view:

> Actual liberty for all of us cannot exist where individual liberties override potential injury done to others. For that reason, the state of Massachusetts was permitted to impose a vaccine mandate without exception, and with a penalty of imprisonment, during the smallpox pandemic. [*Jacobson*, 197 U.S. at 26.] The case before this Court deals with a private actor, and with no actual coercion. Being substantially less restrictive than the *Jacobson* mandate, and being enacted by a private actor, Defendants' policy is well within the confines of the law, and it appropriately balances the public interests with individual liberties.

*Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *8 (E.D. Ky. Sept. 24, 2021); *see also Maryville Baptist Church, Inc. v. Beshear*, 455 F. Supp. 3d 342, 346 (W.D. Ky.), *appeal dismissed*, 977 F.3d 561 (6th Cir. 2020) ("a temporary restraining order allowing large in-person gatherings would substantially harm third parties by facilitating the spread of COVID-19, and the public interest thus does not favor a temporary restraining order").

The Court will not, however, adopt Judge Bunning's charitable treatment of Plaintiffs' views on vaccination. Balancing the equities requires the Court to make judgments about relative risk to Plaintiffs versus the risk to the community as a whole. In our community, COVID continues to devastate. Since the start of August, our region has

seen 448,599 new hospital admissions of patients with confirmed COVID-19.[11]  The case rate this month is roughly double what it was during the first six months of the pandemic.[12]  In Hamilton County alone this week, there were 2,304 new confirmed cases of COVID-19, with 172 new hospital admissions, and 10 deaths.[13]  Those deaths may well have been preventable.  Next month's deaths still are.

Against this objective data, Plaintiffs allege unsupported conspiracy theories.  Rather than "suspicions" about the vaccine, (*Beckerich*, 2021 WL 4398027, at *8), Plaintiffs' allegations are falsehoods.  The complaint contains too many for this Court to review given the time constraints on this Order, but a few examples illustrate the flimflam this Court is asked to weigh against the very real threat of COVID.

More than a dozen times, Plaintiffs allege the Pfizer vaccine has not been fully approved by the FDA.  (Doc. 13, ¶¶ 19, 27, 237, 321, 339, 434, 454, 459, 480, 509–16, 519, 548).  This is false.  The letter fully approving the vaccine is available from FDA.[14]

---

[11] *COVID Data Tracker: New Hospital Admissions*, Centers for Disease Control (last visited Sep. 29, 2021), https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions.

[12] *COVID Data Tracker: COVID-19 Integrated County View*, Centers for Disease Control (last visited Sep. 29, 2021), https://covid.cdc.gov/covid-data-tracker/#county-view|Ohio|39061|Risk|community_transmission_level.

[13] *Id*.

[14] Approval Letter from Mary Malarkey, Dir. Office of Compliance and Biologics Quality, and Marion Gruber, Dir. Office of Vaccine Research and Review, to Amit Patel, Pfizer Inc. (Aug. 23, 2021), available at https://www.fda.gov/media/151710/download.

Plaintiffs claim it is a "lie" that "Covid is still contagious when you're asymptomatic." (Doc 13, ¶ 310). This is false too.[15]

Plaintiffs assert that the statement, "Masks, social distancing and lockdowns have helped 'flatten the curve,'" is a "lie." (Doc. 13, ¶319). This is not only false,[16] it flatly contradicts Plaintiffs' own allegations 58 paragraphs prior. (Doc. 13, ¶ 261) ("Scientific evidence for the protective effect of face masks and respiratory virus infection in healthcare and community settings is overwhelming."); (*see also id.* ¶ 262) ("The wearing of masks, along with the other safety protocols recommended by the CDC such as the social distancing and frequent hand washing contributed to the significant reduction of the spread of Covid-19 disease before vaccines were made available.").

Finally, though it is hardly necessary to the Court's disposition in this order, the Court finds that the behavior of Plaintiffs' counsel disfavors injunctive relief. "There is a fundamental public interest in ending [] abuse of the judicial system, in conserving judicial resources, and in preventing further confusion and disruption in this litigation." *McGirr v. Rehme*, 891 F.3d 603, 614 (6th Cir. 2018). Plaintiffs' counsel set their Ohio clients back nearly a month in time. In that month, counsel likely would have received a

---

[15] Andrew Sayampanathan, Cheryl Heng, et al., *Infectivity of Asymptomatic versus Symptomatic COVID-19*, 397 Lancet 10269 (2021), available at https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)32651-9/fulltext (concluding that asymptomatic cases of COVID-19 are "a potential source of substantial spread within the community setting.").

[16] *Use of Cloth Masks to Control the Spread of SARS-CoV-2*, Centers for Disease Control (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

decision, and, perhaps, appealed that decision to the Sixth Circuit. At the very least, Plaintiffs might have proofread their complaint. Granting Plaintiffs injunctive relief, after weeks of delays, diversions, *confessed* judge shopping,[17] and a flood of barely relevant affidavits, would improperly countenance Plaintiffs' gamesmanship to the detriment of the public's interest in a well-functioning judicial system.

## IV. CONCLUSION

The Court finds that Plaintiffs have not met their burden of establishing entitlement to a temporary restraining order. Accordingly, Plaintiffs' motion for a restraining order (Doc. 14) is **DENIED**.

A district court's denial of a motion for a temporary restraining order generally is not appealable. *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL–CIO*, 473 U.S. 1301, 1304–06 (1985). Such a ruling is appealable, however, if it is tantamount to a ruling on a preliminary injunction. *Wilson v. Wilkinson*, 28 Fed. App'x. 465, 466 (6th Cir.2002) (citing *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 887 n.3 (7th Cir.1986)); *see also Wong-Opasi v. Haynes*, 8 F. App'x 340, 342 (6th Cir. 2001). This Court finds that its instant Order denying Plaintiff's motion for a temporary restraining order is tantamount to an Order denying a motion for a preliminary injunction and, therefore, certifies a finding that the Court's Order denying Plaintiff's motion for a temporary restraining order is a final appealable order as there is no just reason for delay.

---

[17] *See* Eric Deters, The Bulldog Show, *Bulldog Show 1 | September 13, 2021*, YouTube (Sep.13, 2021), https://youtu.be/Orxmwq2b5mk?t=570.

**IT IS SO ORDERED.**

Date: September 30, 2021

*Timothy S. Black*
Timothy S. Black
United States District Judge