**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY HARSMAN,** *et al.* | : | Case No. 1:21-cv-00597 |
| | : | |
| Plaintiffs. | : | Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | **DEFENDANT CCHMC'S MOTION** |
| **CCHMC HOSPITAL MEDICAL CENTER, INC.** | : | **TO DISMISS PLAINTIFFS'** |
| | : | **COMPLAINT** |
| | : | |
| Defendants. | : | |

Defendant Cincinnati Children's Hospital Medical Center ("CCHMC") moves to dismiss all of Plaintiffs' claims against CCHMC under Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6).  Plaintiffs' prolix Complaint—more than 500 paragraphs—is replete with irrelevant allegations of fact, conspiratorial insinuations, and outright falsehoods about CCHMC's COVID-19 vaccination policy, making it impossible for CCHMC to understand the claims, let alone respond to them.  That warrants dismissal under Rule 8(a).  Not only that, Plaintiffs have not alleged a concrete injury—and thus lack constitutional standing—and fail to allege a single viable claim, grounds for dismissal under Rules 12(b)(1) and 12(b)(6), respectfully.  A memorandum of law accompanies this Motion.

                                                    Respectfully submitted,

                                                    */s/ Russell S. Sayre*
                                                    Russell S. Sayre (0047125)
                                                    Aaron M. Herzig (0079371)
                                                    Beth A. Bryan (0082076)
                                                    Spencer S. Cowan (0099556)
                                                    TAFT STETTINIUS & HOLLISTER LLP
                                                    425 Walnut Street, Suite 1800
                                                    Cincinnati, Ohio 45202
                                                    Phone: (513) 381-2838
                                                    Fax: (513) 381-0205
                                                    sayre@taftlaw.com

aherzig@taftlaw.com
bryan@taftlaw.com
scowan@taftlaw.com

*Counsel for Defendant Cincinnati Children's Hospital Medical Center*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY HARSMAN,** *et al.* | : | Case No. 1:21-cv-00597 |
| | : | |
| Plaintiffs. | : | Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | |
| | : | **MEMORANDUM IN SUPPORT OF** |
| **CCHMC HOSPITAL MEDICAL CENTER,** | : | **DEFENDANT CCHMC'S MOTION** |
| **INC.** | : | **TO DISMISS** |
| | : | |
| Defendants. | : | |

This Court has explained that Plaintiffs' 557-paragraph Complaint is a "bucket of mud," and made it perfectly clear that Plaintiffs did not even "take the preliminary steps to assemble a comprehensible claim." (R. 48, Order Denying Pl.'s TRO at 2–3, PageID #1237–38.) Worse still, Plaintiffs' Complaint is filled with lies. (*Id.* at 8–9, PageID #1243-44.) Despite that, the Court went ahead and "waded through the entire complaint, probing" for any ground on which Plaintiffs might be able to win their case. The Court found none. (*Id.* at 3, PageID #1238.)

Plaintiffs have ignored the Court's "hints." They have not dismissed their case, or sought to amend their Complaint to make it comprehensible. So they force the Court to do it for them. As to Defendant Cincinnati Children's Hospital Medical Center ("CCHMC"), the Complaint should be dismissed for at least three reasons.

*First*, Plaintiffs' incomprehensible Complaint does not satisfy the basic (and usually easy to satisfy) pleading standards of Rule 8(a). Though Plaintiffs fail to plead essential details about themselves—such as their occupations, their vaccination status, whether they have requested an exemption to the vaccination policy, and whether they will refuse the COVID vaccine—their Complaint brims with conspiratorial allegations and irrelevant facts, making it all but impossible

3

for CCHMC to respond. There is no reason to proceed with litigation built atop a complaint that this Court described as a "bucket of mud." This is reason enough to dispose of the Complaint.

*Second*, Plaintiffs lack standing to challenge CCHMC's vaccination policy, which has not yet taken effect. Only one plaintiff, Kimberly Harsman, is a CCHMC employee. But tellingly, Harsman has not requested an exemption from CCHMC's vaccination policy, a prerequisite to establish standing. Put differently, Plaintiffs allege no injury caused by CCHMC, nor can they show that any injury is certainly impending or even likely. For that reason, Plaintiffs fail to establish subject-matter jurisdiction.

*Third*, Plaintiffs have not alleged any viable claim against CCHMC. Plaintiffs either invent new causes of action out of whole cloth or fail to allege necessary elements—such as any injury—to sustain the commonly recognized causes of action that they have asserted. For these reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

## FACTUAL BACKGROUND

Plaintiffs sued five Cincinnati area hospital systems, including CCHMC, challenging the hospital systems' COVID-19 vaccination policies. (*See generally* R. 13, Compl.) No two policies are identical—and CCHMC's vaccination policy does not take effect until November 1, 2021. (R. 36–1, Declaration of Robert Carpenter ("Carpenter Decl.") ¶ 5, PageID #1129.)

Plaintiffs' Complaint contains no information whatsoever about the named plaintiffs—including their occupations, vaccination status, or any other relevant factors that might entitle them to an exemption from the vaccination policy. (*See generally* R. 13, Compl.; *see also* R. 48, Order at 2, n. 3 ("Plaintiffs do not actually allege that they are employees of the Defendants in their complaint or, indeed, any facts about themselves. Nor is the class definition limited to employees of the Defendants.").) Plaintiff Kimberly Harsman is the only named plaintiff

4

asserting claims against CCHMC, but Harsman has not informed CCHMC of her vaccination status and has not applied for an exemption from CCHMC's vaccination policy. (R. 36–1, Carpenter Decl. ¶ 8, PageID #1130.)

**ARGUMENT**

This Court should dismiss all of Plaintiffs' claims against CCHMC under Federal Rule of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). On a motion to dismiss, this Court must "(1) view the compliant in [the] light most favorable to Plaintiff[s]; and (2) take all *well-pleaded* factual allegations as true." *Jetter v. City of Cincinnati*, Case No. 1:20-cv-581, 2021 WL 4504247, at *2 (S.D. Ohio Sept. 30, 2021) (Black, J.). But this Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Instead, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Trial courts may also sua sponte dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). And although this Court must liberally construe pro se complaints, Plaintiffs are represented by counsel and therefore cannot rely on that same forgiving standard.

**I.     Plaintiffs' Complaint does not satisfy basic pleading standards**.

As a threshold matter, Plaintiffs' Complaint should be dismissed under Rule 8(a) for failing to satisfy even the most basic pleading standards. Rule 8 requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is not a difficult hurdle to clear. At minimum, plaintiffs cannot be "content to let the

5

Defendants and the Court sift through [ ] paragraphs of largely irrelevant factual summaries to attempt to determine the basis of [their] claims." *Aaron v. Durrani*, 2014 WL 996471, at *3 (S.D. Ohio Mar. 13, 2014) (Black, J.) (citation omitted). Plaintiffs must instead "edit and organize their claims and supporting allegations into a manageable format." *Id.* at *2. These minimal requirements exist because a complaint that is "prolix and/or confusing [ ] makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Agee v. Alphatec Spine, Inc.*, No. 1:15-cv-750, 2017 WL 5706002, at *2 (S.D. Ohio Mar. 27, 2017) (Black, J.) (citation omitted).

Neither "short" nor "plain," Plaintiffs' Complaint does not come close to meeting Rule 8's basic requirements. Plaintiffs' Complaint comprises allegations that *lack even a tangential connection* to the subject matter of this lawsuit, including allegations about CCHMC CEO's salary, the cost of Pfizer's COVID-19 vaccine in Albania, and South Carolina senator Lindsey Graham. (R. 13, Compl. ¶¶ 92, 279, 325, PageID #747, 772, 776.) On top of these non-sequiturs, Plaintiffs allege a "criminal conspiracy between the U.S. government, state government, media, pharma and corporate healthcare to line their pockets at the expense of the healthcare workers and American taxpayers," and describe the FDA's approval of Pfizer's COVID vaccine as a "sick political ploy to try and further coerce leery healthcare workers and Americans to obtain the vaccine." (*Id.* ¶¶ 320, 386, PageID #775, 783.) Although Plaintiffs can be credited for pulling no punches, they fail to land any blows.

Plaintiffs' Complaint is so unwieldy that they seem to lose track of their own allegations. As this Court noted, Plaintiffs first assert that the statement, "'Masks, social distancing and lockdowns have helped flatten the curve' is a 'lie.'" (R. 48, Order Denying Pls.' Mot. for TRO at 13, PageID 1237 (quoting R. 13, Compl. ¶ 319, PageID #775.) But that allegation contradicts

another allegation Plaintiffs make 58 paragraphs prior, alleging: "Scientific evidence for the protective effect of face masks and respiratory virus infection in healthcare and community settings is overwhelming." (*Id.* (quoting R. 13, Compl. ¶ 261, PageID #769–70).)

Having indulged the Plaintiffs by wading through those allegations, this Court analogized the Complaint to a "bucket of mud," recognizing that neither the Court nor defense counsel should bear the burden of excavating a cognizable claim out of the morass. (R. 48, Order Denying Pls.' Mot. for TRO, Page ID #1237). It makes little sense to permit this litigation to continue, built atop that bucket of mud. Indeed, this Court has dismissed a similar (and much less prolix) 159-page complaint because it was "impossible to identify a single instance where Plaintiffs make an allegation of a specific action by a specific Defendant that supports their claims." *Aaron*, 2014 WL 996471, at *4 (S.D. Ohio Mar. 13, 2014) (Black, J.); *see also Plymale v. Freeman*, No. 90–2202, 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991) (trial court did not abuse its discretion in dismissing "rambling" 119-page complaint asserting nonsensical claims).

## II. Harsman lacks standing to challenge CCHMC vaccine policy.

Harsman, the only plaintiff affiliated with CCHMC, lacks standing to challenge CCHMC's vaccination policy. Before this Court can even grant relief, it must confirm whether Harsman has met her threshold burden to establish subject-matter jurisdiction, including her standing to sue. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860–61 (6th Cir. 2020). To meet that burden, Harsman "must first show that [she has] suffered an injury in fact." *Id.* at 861. That injury "must be both '(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).) Harsman, however cannot satisfy this bedrock requirement.

*First*, Harsman has no concrete injury. CCHMC's vaccination policy does not take effect until November 1, 2021, so Harsman cannot show any actual harm, such as loss of employment. *Buchholz*, 946 F.3d at 861 ("A concrete injury is, like it sounds, real and not abstract."). *Second*, Harsman cannot show that an injury is imminent. The mere "fear of future harm is not an injury in fact unless the future harm is 'certainly impending.'" *Id.* at 865 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). But Harsman has not requested an exemption, nor has CCHMC denied her request for an exemption. So Harsman cannot show that any injury—*i.e.*, termination—is "certainly impending."

Trial courts have applied these basic constitutional principles in the context of vaccination policies, too. In *Wade v. University of Connecticut Board of Trustees*, the trial court held that a student lacked standing to challenge the University of Connecticut's COVID-19 vaccination policy because "she has failed to apply for an exemption as the policy expressly allows her to do." No. 3:21-cv-924, __ F. Supp. __ 3d, 2021 WL 3616035, at *9 (D. Conn. Aug. 16, 2021). *See also Klaassen v. Trs. of Indiana Univ.*, No. 1:21-cv-238, __ F. Supp. 3d __, 2021 WL 3073926, at *36–37 (N.D. Ind. July 18, 2021) (a justiciable controversy in the vaccine mandate context exists only if the plaintiff does not qualify for an exemption). To be sure, a plaintiff need not seek an exemption from a policy if doing so would be futile. *Wade*, 2021 WL 3613035, at *9. But Harsman do not allege that CCHMC's exemption process is futile, nor is it.[1] Thus, this Court should dismiss Harsman's claims for lack of subject-matter jurisdiction.

---

[1] Plaintiffs supplied affidavits from multiple CCHMC employees to support their Motion for a Temporary Restraining Order, including at least four who received exemptions from CCHMC's vaccination policy. (R. 36–1, Carpenter Decl. ¶¶ 9–15, PageID #1130–31.)

**III.    Additional dispositive defects embed all of Plaintiffs' claims**.

Even if the Court were to set aside those glaring pleading and jurisdictional defects (it should not), Plaintiffs' claims also fail under Rule 12(b)(6)—some for multiple reasons. Indeed, Plaintiffs have not alleged a single viable claim, which is no surprise; courts nationwide have upheld challenges to private hospital systems' COVID vaccination policies. *See*, *e.g.*, *Bridges v. Houston Methodist Hosp.*, Civ. Act. H-21-1774, __ F. Supp. 3d __, 2021 WL 2399994, at *4 (S.D. Tex. June 12, 2021) (dismissing all claims challenging private hospital system's COVID vaccination policy); *Beckerich v. St. Elizabeth Med. Ctr.*, Civ. No. 21–105, __ F. Supp. 3d __, 2021 WL 4398027, at *1 (E.D. Ky. Sept. 24, 2021) (denying temporary restraining order challenging private hospital system's COVID vaccination policy). This case is no different.

   **A.    Plaintiffs' anti-discrimination claims fail**.

Plaintiffs assert that their first two claims—premised on violations of Ohio Revised Code § 4112—are their "strongest claim[s]." (R. 13, Compl. ¶ 29, PageID #743.) But those claims turn out to be remarkably flimsy: Plaintiffs premise these claims on the vague allegation that they are "qualified individuals with disabilities as defined by Ohio law." (*Id.* ¶ 431, PageID #787.) Plaintiffs, however, allege no details about their disability or why it should exempt them from them from CCHMC's vaccination policy—and their mere assertion that they are qualified individuals with a disability is "conclusory and not entitled to be true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

   **B.    Plaintiffs' promissory estoppel claim fails**.

Plaintiffs' promissory estoppel claim fails for lack of any injury. The elements of a promissory estoppel claim are: "(1) a clear an unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) injury by the reliance by

9

the party claiming estoppel." *Trehar v. Brightway Ctr.*, 2015 WL 5813871, at *3 (Ohio Ct. App. Oct. 2, 2015). But because CCHMC's vaccination policy has not taken effect and Harsman has not sought or been denied an exemption, Harsman cannot show any injury.

### C. Plaintiffs' state antitrust claims fail.

Plaintiffs' state antitrust claims fail, once again for lack of injury. Ohio's antitrust statute, Ohio Revised Code § 1331.01 *et seq.*, provides individual plaintiffs with a cause of action—but only if they have suffered an *injury*. *See* Ohio Rev. Code § 1331.08 ("[T]he person injured in the person's business or property…may sue therefore."). Yet Harsman cannot show *any injury*, given that CCHMC's vaccination policy has not taken effect and Harsman has not sought or been denied an exemption. Nor has she been vaccinated against her will. Moreover, the vaccine policies do not even relate to the type of harm that the antitrust laws are intended to protect against. To establish antitrust standing, the plaintiff must "show more than merely an 'injury causally linked' to a competitive practice; it 'must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). But CCHMC's policies have nothing to do with commerce—and have not caused any antitrust injury, such as decreasing output, increasing prices, or harming consumers. (Indeed, on each point, the opposite is the case.) The vaccination policy is a health and safety measure, imposed to protect employers, employees, clients, patients, and the public at large.

Even if Plaintiffs satisfied the antitrust injury threshold, they do not sufficiently plead a product or geographic market or attempt to offer facts that could plausibly explain how any anticompetitive effects exist, let alone outweigh the procompetitive benefits of a vaccine

mandate. *See NicSand*, 507 F.3d at 458–59. Plaintiffs also suggest that they have an "anti-poaching" claim. An anti-poaching agreement is one in which employers agree not to hire each other's employees, and once more, the plaintiff must show that the agreement caused some injury. *See, e.g.*, *Ogden v. Little Caesar Enter., Inc.*, 393 F. Supp. 3d 622, 637 (E.D. Mich. 2019). Plaintiffs, however, offer no facts suggesting that such an agreement exists or that it caused any injury. The antitrust claims fail.

### D. Plaintiffs' injunctive relief claims fails.

This Court can dispose of Plaintiffs' two claims for injunctive relief for this simple reason: there is no standalone cause of action under Ohio law for injunctive relief. *See, e.g.*, *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012). Injunctive relief is a "*remedy* for a claim, not a cause of action unto itself." *Id.* And Plaintiffs are not entitled to injunctive relief as a remedy because they fail to state a single viable claim.

### E. Plaintiffs' claims for violating the right to refuse unwanted care and tortious interference with personal healthcare fail.

Plaintiffs invent out of whole cloth their claims for "violation of the right to refuse unwanted care" and "tortious interference with personal healthcare." These causes of action simply do not exist under Ohio law. To the extent that Plaintiffs premise these claims on violations of Ohio's constitution, that, too gets them nowhere. There is no private cause of action for civil torts arising under the Ohio constitution. *See, e.g.*, *Grimm v. Cappelli*, No. 3:20-cv-003, 2020 WL 6144521, at *2 (S.D. Ohio Oct. 20, 2020); *Provens v. Stark Cty. Bd. Of Mental Retardation & Dev. Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992); *see also* R. 48, Order at 8, PageID #1239 ("Because Plaintiffs cannot establish that Defendants are state actors, Plaintiffs' likelihood of successfully proving 'constitutional violations' is zero.").

> **F. Plaintiffs' claims for fraud in the concealment and constructive fraud, fraudulent inducement, breach of fiduciary duty and negligence, duress, and intentional infliction of emotional distress fail**.

Plaintiffs offer nothing more than a "formulaic recitation of the elements" to support their laundry list of claims for fraudulent concealment and constructive fraud, fraudulent inducement, breach of fiduciary duty and negligence, duress, and intentional infliction of emotional distress. *Iqbal*, 556 U.S. at 681.[2] That, alone, is reason to dismiss their claims. Even more, Plaintiffs' "injury" is both intangible and hypothetical. Plaintiffs allege "stress, mental and physical pain and suffering, mental anguish, inconvenience, and loss of enjoyment," all from the possibility of some future injury.[3] But the fear of a future injury that is not "certainly impending" is not cognizable. *Buchholz*, 946 F.3d at 865 (citation omitted). Because CCHMC's vaccination policy has not taken effect—and because she has not requested or been denied an exemption from that policy—Harsman cannot show an actual injury, nor one that is impending.

---

[2] Plaintiffs come nowhere close to pleading their fraud-based claims with particularity. *See* Fed. R. Civ. P. 9(b) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[3] Intentional infliction of emotional distress "requires conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buchholz*, 946 F.3d at 870 (quoting Restatement (Second) of Torts §46m cmt. d (1965)). But vaccination policies have been firmly rooted in American history and jurisprudence for more than a century. The City of Cambridge, Massachusetts, for example, *ordered its citizens* vaccinated against smallpox—and, to enforce that mandate, imposed a $5 fine against non-compliant citizens. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 24–25, (1905). One citizen failed to comply and challenged the mandate under the Fourteenth Amendment. *Id.* The Supreme Court, however, rejected that challenge, explaining that a state "must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety." *Id.*

### G.  Plaintiffs' claims premised on alleged violations of criminal law fail.

Plaintiffs' premise their criminal claims—for (1) criminal coercion; (2) civil and criminal conspiracy; and (3) civil liability for criminal conduct—on the theory that CCHMC has imposed an illegal and coercive condition of employment. But there is *nothing* illegal about a policy requiring vaccination among health care workers, particularly one that *exempts qualified workers upon request*. *See Bridges*, 2021 WL 2399994, at *2 (hospital system's vaccination policy "is not coercion"). As a United States District Judge for the Eastern District of Kentucky patiently explained in a related lawsuit challenging St. Elizabeth Medical Center's vaccination policy:

> If an employee believes his or her individual liberties are more important than legally permissible conditions on his or her employment, that employee can and should choose to exercise another individual liberty, no less significant—the right to seek other employment.

*Beckerich*, 2021 WL 4398027, at *9. That CCHMC has presented Harsman with that choice is not illegal or coercive. This Court should dismiss Plaintiffs' criminal claims against CCHMC.

### CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' claims against CCHMC with prejudice.

13

Respectfully submitted,

*/s/ Russell S. Sayre*
Russell S. Sayre (0047125)
Aaron M. Herzig (0079371)
Beth A. Bryan (0082076)
Spencer S. Cowan (0099556)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
sayre@taftlaw.com
aherzig@taftlaw.com
bryan@taftlaw.com
scowan@taftlaw.com

*Counsel for Defendant Cincinnati Children's Hospital Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served, via the Court's CM/ECF system, on all counsel of record this 25th day of October, 2021.

*/s/ Russell S. Sayre*