**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY HARSMAN, et al.** | : | Case No. 1:21-cv-00597 |
| | : | |
| Plaintiffs, | : | (Judge Timothy S. Black) |
| vs. | : | |
| | : | |
| **CINCINNATI CHILDREN'S HOSPITAL** | : | |
| **MEDICAL CENTER, et al.** | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS TRIHEALTH INC., TRIHEALTH G, LLC., BETHESDA
HOSPITAL, INC., BETHESDA NORTH, AND GOOD SAMARITAN
HOSPITAL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

Now come the Defendants, TriHealth, Inc., TriHealth G, LLC, Bethesda Hospital, Inc., Bethesda North, and Good Samaritan Hospital (together "TriHealth"), by and through counsel, and pursuant to Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6), respectfully request that this Court dismiss the Plaintiffs' claims against TriHealth. For the reasons stated in the accompanying memorandum, the Court must dismiss those claims because (1) Plaintiffs have not pled a short and plain statement of their claims; (2) Plaintiffs lack standing to maintain their claims against TriHealth; and (3) Plaintiffs have failed to state any claim upon which relief can be granted.

**<u>Memorandum</u>**

**I.      Introduction.**

With respect to Plaintiffs' complaint, little more can be said.  There are only so many synonyms for incoherent, indecipherable, unintelligible, and inscrutable.  But there

is no need for *Roget's* when "bucket of mud" so accurately captures all that is wrong with the complaint in this case. The complaint has easily earned that title.

For the reasons set forth below, the Court must dismiss all of the Plaintiffs' claims. The Plaintiffs have not succinctly pled their claims as Rule 8 requires; they lack standing; and their claims fail as a matter of law.

## II.   Argument.

### A.   With Their 570-Paragraph Complaint, Plaintiffs Have Flunked Rule 8's "Short And Plain Statement" Requirement.

TriHealth first seeks dismissal of Plaintiffs' 570-paragraph complaint on Civ. R. 8 grounds. Under that rule, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Determining whether a complaint is short and plain is committed to the district court's discretion. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021).

Rule 8 prohibits "*obfuscation* of the plaintiff's claims." *Id.* at 651. Excessive length is a factor, although not dispositive. Instead, "[t]he key is whether the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Id.* (internal quotation marks and citations omitted). "The district court and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue." *Id.* Instead, Plaintiffs must "edit and organize their claims and supporting allegations into a manageable format." *Aaron v. Durrani*, 2014 WL 996471, *2 (S.D. Ohio March 13, 2014) (Black, J.).

In *Kensu*, the district court applied Rule 8 and dismissed a 108-page, 579-paragraph complaint with prejudice. The Court found that the defendants would have

2

"had to expend enormous effort digging through a morass of irrelevancies to identify the few allegations that matter." *Kensu,* 5 F. 4th at 649.  Affirming this dismissal, the Sixth Circuit stated that it was "hard to figure out which allegations are really at issue and which are background[.]" *Id.* See also *Agee v. Alphatec Spine, Inc.*, 2017 WL 5706002, *2 (S.D. Ohio Mar. 27, 2017) (stating that minimal pleading requirements exist because a complaint that is "prolix and/or confusing makes it difficult for the trial court to conduct orderly litigation") (Black, J.).

Against these authorities, the Plaintiffs' 128-page, 570-paragraph complaint fails. This Court has already likened the Plaintiffs' rambling, inscrutable complaint to Rule 8's forbidden "bucket of mud." (Dkt. #48 at PAGEID 1237).  Since then, the other Defendants have catalogued why that label is spot-on. (See, e.g., Dkt. #54 at PAGEID 1908-10; Dkt. #53 at PAGEID 1841-44); Dkt. #52 at PAGEID 1806-08).  TriHealth incorporates those arguments.

In short, no Defendant can be expected to respond to such an indecipherable and disorganized pleading.  A well-plead, organized, proofread complaint gives the defendant notice of the claims and informs the scope of discovery.  But in this case, the Plaintiffs have buried any claims beneath layers of conspiracy and falsehood.  As one example, the Plaintiffs tellingly devote 46 paragraphs to "Reasons Plaintiffs Don't Want To Take The Vaccine" and "Ten Lies Being Told To The American Public;" but they only direct 17 paragraphs at TriHealth specifically. (Dkt. #13 at PAGEID 756-58; 772-75).  In another paragraph, Plaintiffs insinuate that "all COVID-19 vaccines are bioweapons" and that one vaccine ingredient "can be used to create a brain-computer interface…." (*Id.* at 776-77, ¶¶ 330, 333).

3

By suggesting the vaccine might be a mind-control device and pushing other fringe conspiracies, Plaintiffs seem more interested in feeding red meat to a susceptible YouTube audience than in pleading actual claims.  Rule 8 prohibits these editorials.  That rule sets standards for pleadings, and Plaintiffs have violated them here. *Arnold v. Alphatec Spine, Inc.*, 2014 U.S. Dist. LEXIS 87079, *11, 16 (S.D. Ohio 2014) (stating that "[p]leadings which are rambling, disorganized, and undecipherable are unacceptable," because they "exact an intolerable toll on the trial court's docket, lead to unnecessary discovery, and impose unwarranted expense on the litigants, the court and the court's personnel and resources").  Their claims must be dismissed.

**B.  Because Plaintiffs Lack Standing, Their Claims Must Be Dismissed For Lack Of Subject Matter Jurisdiction.[1]**

**1.  Plaintiffs Bear The Burden On Standing.**

The Court must also dismiss the Plaintiffs' claims because the Plaintiffs lack standing to assert their claims.  Without standing, there is no subject matter jurisdiction. *Grace v. Kentucky*, 2021 U.S. Dist. LEXIS 33422, *21 (W.D. Ky. 2021)

Standing is a crucial preliminary issue.  "To reach the merits of a case, an Article III court must have jurisdiction." *Grace*, 2021 U.S. Dist. LEXIS 33422, *21 (quoting *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950-51 (2019)).  "A party seeking to invoke a federal court's jurisdiction must have standing to do so." *Id.*  Thus, the "threshold question in every federal case" is whether the plaintiff has standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  With respect to that question, "[i]t is well-settled law that named plaintiffs may not rely on general class allegations to support their claims, but

---

[1] TriHealth's Civ. R. 12(b)(1) argument concerning standing is supported by the Declaration of Ellen Beckett, a copy of which is attached as Exhibit 1.

rather must show that each, individually, is entitled to relief." *Aaron v. Durrani*, Case No. 1:13-cv-202, 2013 U.S. Dist. LEXIS 130510, at *11 (S.D. Ohio Sept. 12, 2013).

"A plaintiff bears the burden of establishing standing to bring [its] claim at the pleading stage." *Grace*, 2021 U.S. Dist. LEXIS 33422, *21 (citing *Primus Grp., LLC v. Smith & Wesson Corp.*, 2021 WL 423741, *1, 2 (6th Cir. 2021)). "When a plaintiff fails to establish standing, his complaint is subject to dismissal…." *Id.*

Notably, the elements of Article III standing "are not mere pleading requirements but rather are an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561. Nor is standing a one-time requirement. Because federal courts can "hear only active cases or controversies," a plaintiff must have a "personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness)." *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016). "If the plaintiff ceases to have standing such that a live case or controversy no longer exists, the case becomes moot." *Id.* at 715. When a plaintiff lacks standing and the case is moot, the Court lacks subject-matter jurisdiction and "must dismiss the case." *Columbia MHC E., LLC v. Stewart,* 815 F. App'x 887, 890 (6th Cir. 2020).

### 2. Plaintiffs Cannot Survive A Facial Or Factual Challenge To Standing.

There are two types of standing challenges under Rule 12(b)(1): "a facial attack or a factual attack." *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading," and the court must "take[] the allegations in the complaint as true, just as in a Rule 12(b)(6) motion." *Id.* (internal quotation omitted). "A factual attack, on the other hand, raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the

factual predicate that subject-matter does or does not exist.'" *Id.* at 817 (quoting *Genteck Bldg. Prods., Inc. v. Sherwin-Williams Co.,*, 491 F.3d 320, 330 (6th Cir. 2007)).

Here, the Plaintiffs cannot survive a facial *or* factual challenge to their standing. In the context of a vaccine mandate case, a plaintiff only has standing if she has not been vaccinated and does not qualify for exemptions. See *Wade v. Univ. of Conn. Bd. of Trs.,* No. 3:21-cv-924, 2021 U.S. Dist. LEXIS 153565, *16 (D. Conn. Aug. 16, 2021) (holding that plaintiffs lacked standing and that their claims were moot because their requests for exemptions had been granted and they had "no continuing real or expected imminent injury from [the defendant's] vaccination requirement"); *Klaasen v. Trs. of Ind. Univ.,* No. 1:21-cv-238, 2021 U.S. Dist. LEXIS 133300, at *37 (N.D. Ind. July 18, 2021) (finding that plaintiffs who had received an exemption did not have standing to challenge COVID-19 vaccine mandate), *aff'd*, 7 F.4th 592 (7th Cir. 2021).

First, with respect to TriHealth's facial attack, the Plaintiffs fail to allege a single factual allegation about themselves – including whether they are employed by TriHealth or by any of the other Defendants; whether they are vaccinated; the outcome or status of any exemption request; or whether they have suffered or will suffer a particular individual harm.

Second, the Defendants cannot defeat a factual attack. Andrea Velez is the only Plaintiff affiliated with TriHealth in this case. She requested and received a religious exemption on September 22, 2021. (Beckett Dec., ¶9). She was informed of this decision that same day and continues to work at TriHealth. (*Id.*) Under the authorities cited above, as an employee who received an exemption, Velez does not have standing to assert her claims.

### C. Plaintiffs' Claims Must Also Be Dismissed On Fed. R. Civ. P. 12(B)(6) Grounds.

TriHealth next seeks dismissal under Fed. R. Civ. P. 12(b)(6). Given the Court's familiarity with that standard, we will not belabor it here. In short, in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When, as here, there are insufficient facts to "nudge[] the claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

#### 1. Count I: Plaintiffs' Disability Discrimination Claim.

First, Plaintiffs allege discrimination under R.C. Chapter 4112 based upon disability and an alleged failure to grant medical exemptions to the vaccine mandate. In a self-assessment that does not bode well for Plaintiffs' other claims, Plaintiffs optimistically assert that this claim is one of their strongest (Dkt. #13 at PAGEID 743, ¶29).

As an initial matter, the complaint fails to aver specifics about any individual Plaintiff regarding an alleged disability; or any circumstance where a disabled Plaintiff unsuccessfully sought an exemption. In the absence of such basic allegations, Plaintiffs have failed to state a claim for disability discrimination. *Cioroch v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 2008-Ohio-5725, ¶23 (Ct. Cl. 2008) (noting that elements

of Ohio disability discrimination claim include allegations that plaintiff has a qualifying disability and that defendant took adverse employment against plaintiff, at least in part, because plaintiff was disabled) (citing *Hazlett v. Martin Chevrolet*, 496 N.E.2d 479 (Ohio 1986)).

As another example, Plaintiffs fail to show they are disabled as contemplated by the statute. R.C. 4112.01(A)(13) defines disability as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment."  But ignoring this all-important definition, Plaintiffs do not allege a single fact regarding any alleged impairment that substantially limits any Plaintiff's major life activity.  Paragraph 431 of the complaint states only that "Plaintiffs and the class are qualified individuals with disabilities as defined by Ohio law." But again, unsupported conclusory allegations are not sufficient to survive a motion to dismiss. Even under the most liberal view of notice pleading, Plaintiffs have failed to plead the basic framework to show a *prima facie* case of a disability – let alone discrimination.

### 2.    Count II: Religious Discrimination.

In Count II, Plaintiffs claim that TriHealth has unlawfully discriminated against them on the basis of their religion.  But in their specific allegations against TriHealth, Plaintiffs make no allegations (as they do against other Defendants) that TriHealth blanketly denied religious exemptions. (Dkt. #13 at PAGEID 756-58, ¶¶183-89).  Accordingly, Plaintiffs have not pled that TriHealth's vaccine exemption process is being executed improperly

or that application to it would be futile.  As a result, Plaintiffs have not stated a claim for religious discrimination.

Even further, Plaintiffs have not alleged the minimum to support a *prima facie* case of religious discrimination – as is their burden. *Franks v. Natl. Lime & Stone Co*., 138 Ohio App.3d 124, 128, 740 N.E.2d 694 (2000).  An employee meets this initial burden only by showing that the employee holds a sincere religious belief that conflicts with an employment requirement; the employee has informed his or her employer of the conflict; and the employee was discharged for failing to comply with the conflicting employment requirement.  *Id.*; *Johnson v. SK Tech, Inc*., 2010-Ohio-3449, ¶ 33.  If a *prima facie* case is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. *Johnson*, ¶ 33.

But despite the many possibilities of a 557-paragraph complaint, Plaintiffs never allege a sincerely-held religious belief (as is necessary to assert a claim for religious discrimination.)  Instead of trying to state an actual claim, Plaintiffs chose to spend countless paragraphs condemning the COVID-19 vaccine and trumpeting their anti-vaccination views.  But several courts addressing such sentiment have held that anti-vaccination beliefs and a strong desire not to be vaccinated are not religious beliefs subject to protection from religious-discrimination statutes. *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Penn.*, 877 F.3d 487 (3rd Cir. 2017) (strong opposition to vaccination is not a religious belief).  *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (parent's opposition to vaccination was "based, not on religious grounds, but on scientific and secular theories"); *Hanzel v. Arter*, 625 F.Supp. 1259, 1260, 1265 (S.D.

Ohio 1985) (describing a professed belief in "chiropractic ethics" – "a body of thought which teaches that injection of foreign substances into the body is of no benefit and can only be harmful" – as philosophical rather than religious); *McCartney v. Austin*, 31 A.D.2d 370, 298 N.Y.S.2d 26, 27 (1969) (opposition to vaccination, whether or not predicated upon personal moral scruples or medical concerns, is not upon religious grounds).

Here, Plaintiffs have alleged only secular grounds for refusing to be vaccinated. Because they have not pled any sincerely-held religious beliefs that might necessitate accommodation under R.C. Chapter 4112, Count II fails to state a claim.

### 3.      Count III: Promissory Estoppel.

In Count III, Plaintiffs claim promissory estoppel. Plaintiffs base that claim on the Defendants' alleged promise (in 2020) that there would not be a vaccine mandate.

With this claim, Plaintiffs seek to invoke the promissory estoppel exception to employment-at-will. Under that exception, an employer is bound to honor a promise made to an employee when (1) the promise is one that the employer should reasonably expect to induce action or forbearance on the part of the employee; (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 105, 483 N.E.2d 150 (1985). The promissory-estoppel exception will not apply when there is a promise of future benefits or opportunities but not a specific promise of continued employment. *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 110-11, 570 N.E.2d 1095 (1991).

To trigger this exception, specific promises of job security must be clear and unambiguous. *Shaw v. J. Pollock Co.*, 82 Ohio App.3d 656, 660, 612 N.E.2d 1295 (1992). Additionally, an employee must show that he or she detrimentally changed his or her

position in reliance on the employer's representation.  *Srail v. RJF Internatl. Corp*., 126 Ohio App.3d 689, 711 N.E.2d 264 (1998), citing *Gargasz v. Nordson Corp.*, 68 Ohio App.3d 149, 153, 587 N.E.2d 475, 477 (1991).

For example, in *Kirksey v. Automotive Cosmetics Corp*., 2004-Ohio-1060, a former employee alleged that when his employer offered to rehire him, he was promised an increase in his commission percentage.  The appellate court held that though the employer may have promised this benefit, "this promise did not constitute a promise of secure, continued employment."  *Id.* at ¶ 21.

In this case, the Defendants' alleged promise not to implement a vaccine mandate does not constitute a specific promise of secure, continued employment that would alter the at-will employment relationship.  "Vague projections of future business direction" cannot constitute the basis for promissory estoppel in the employment context.  *Dahl v. Battelle Memorial Institute*, 2004-Ohio-3884, ¶ 23.

In *Dahl*, the appellate court rejected a claim that the employer's best estimate as to the future of the employee's division was in essence a promise that altered his at-will employment relationship where there was no evidence of clear unambiguous promises of job security.  Like in *Dahl*, any alleged TriHealth statement, under the facts known to it at the time, that there would be no vaccine mandate for employees, was not a clear promise of job security.  Instead, any such statement would merely be a projection of the organization's future direction.

Further, Plaintiffs' bare assertion that they relied on the alleged "no vaccine mandate" promise is insufficient as a matter of law.  In *Hanly v. Riverside Methodist Hosp*., 78 Ohio App.3d 73, 603 N.E.2d 1126 (1991), plaintiff claimed that in reliance on

defendant's promises of job security, he did not seek other employment.  But there was no indication that defendant dissuaded plaintiff from pursuing *specific* job opportunities outside the hospital with promises of job security. Rather, the record contained only plaintiff's bare assertion that he gave up opportunities at other (unidentified) employment. But such conclusory statements are "insufficient to invoke the promissory estoppel exception to the employment-at-will doctrine." *Id.* at 80, citing *Smith v. Robins Beverage Group, Inc.*, Franklin App. No. 90AP-1022 (Sept. 3, 1991) and *Pyle v. Ledex, Inc.*, 49 Ohio App.3d 139, 146, 551 N.E.2d 205, 212 (1988).

Here, Plaintiffs make no allegations that they did anything but continue to work at TriHealth and the other Defendants in reliance on the alleged promise.  But, as a matter of law, simply staying put and working is "insufficient to establish the necessary element of detrimental reliance."  *Johnson v. SK Tech, Inc.*, 2010-Ohio-3449, ¶ 68, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 18 (1998) (reasoning that "an at-will employee who claims reliance in not looking for other work cannot distinguish himself from one who merely continues work normally") and *Stickler v. Key Corp.*, 2003-Ohio-283, ¶ 27 ("Detrimental reliance does not exist where the promisee merely refrains from seeking other employment unless he rejects an offer.").  Thus, because Plaintiffs do not plead that they rejected any offers of employment in reliance on the alleged "no vaccine" promise, their claim for promissory estoppel fails as a matter of law.

### 4.    Violations of Ohio Valentine Act.

With Counts IV and V, Plaintiffs assert violations of antitrust law under the Ohio Valentine Act, ORC § 1331.01, *et seq.*  But as set forth in the other Defendants' motions

to dismiss, these claims fail. (Dkt. #53 at PAGEID 1854-59; Dkt. #53 at PAGEID 1913-14; Dkt. #52 at PAGEID 1811).  TriHealth incorporates those arguments by reference.

### 5.    Count VI: Plaintiffs' Claim For "Injunctive Relief."

In Count VI, Plaintiffs make a claim "injunctive relief."  But this is a remedy – and not a claim.  For this reason, this "claim" must be dismissed.

Even if "injunctive relief" was a claim, it would be moot.  With this count, Plaintiffs seek temporary and preliminary injunctions.   But the Court has already denied those requests.

### 6.    Count VII: Violation Of Right To Refuse Medical Care.

In Count VII, Plaintiffs claim that the vaccine mandate violates their fundamental right to refuse unwanted medical care.  (Dkt. # 13 at PAGEID 796-98, ¶¶475-487). Plaintiffs contend that under the Ohio Constitution, a forcible injection into a nonconsenting person's body impermissibly interferes with the person's liberty.

This Court has already addressed this claim's futility.  In its *Order Denying Plaintiffs' Motion For A Temporary Restraining Order*, the Court stated that the Plaintiffs' likelihood of success in proving constitutional violations was "zero" – because Defendants are not state actors. (Dkt. #48 at PAGEID 1239).  For this same reason, the Court must dismiss this claim. See also *Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, *3 (E.D. Ky. Sept. 24, 2021) ("Put simply, without establishing that defendants are state actors, plaintiffs' constitutional claims cannot stand, and thus have zero likelihood of success on the merits."); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (state's police powers include power to require vaccination to protect health and safety).

**7.    Count VII: Criminal Coercion.**

In Count VIII, Plaintiffs allege that Defendants are liable for "criminal coercion."  But no such claim exists under Ohio law.

**8.    Count IX: Fraud In The Concealment/Constructive Fraud.**

In Count IX, Plaintiffs allege "fraud in the concealment and constructive fraud."  But these claims are fatally deficient because they are not pled with the required specificity.  "Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud – i.e., the who, what, when, where, and how of the alleged fraud." *United States ex rel. Roycraft v. GEO Grp., Inc.*, 722 Fed. App'x. 404, 406 (6th Cir. 2018).  Furthermore, under the particularity requirement, a plaintiff may not lump all alleged wrongdoings together in a case involving multiple defendants.  "Rather, the plaintiff is required to make specific and separate allegations against each defendant." *Moran v. ALC Fin., Inc.*, 2006 U.S. Dist. LEXIS 114114, *25 (S.D. Ohio 2006).

Plaintiffs flunk these requirements.  The Plaintiffs never attribute any particular fraud to TriHealth – including the time, place, and content of an allegedly false representation by TriHealth.  Instead, to hide their inability to attribute fraud to any particular Defendant, the Plaintiffs group all of the Defendants together.  But painting all of the Defendants with the same broad brush is prohibited as set forth above.  These claims must be dismissed.

**9.    Count X: Tortious Interference With Personal Healthcare.**

In Count X, Plaintiffs allege "tortious interference with personal healthcare."  In one angry paragraph, the Plaintiffs allege that "the Defendants have unilaterally declared there will be no medical exemptions and have ordered their physician groups to NOT

grant medical exemptions no matter the facts." (Dkt. #13 at PAGEID 800, ¶508) (emphasis in original). According to the Plaintiffs, this is "evil, criminal and actionable." *Id.*

As an initial matter, no such claim exists under Ohio law. Furthermore, this allegation is absolutely false. As this Court previously recognized, TriHealth and the other Defendants have granted "*hundreds* of religious and medical exemptions." (Dkt. #48 at PAGEID 1237) (emphasis in original). The Court must dismiss Count X.

### 10. Count XI: Fraudulent Inducement.

In Count XI, Plaintiffs allege fraudulent inducement. This Court can dismiss this claim for the same reasons supporting the dismissal of Plaintiffs' previously discussed fraud claim in Count IX.

### 11. Count XII: Civil And Criminal Conspiracy.

With Count XII, Plaintiffs allege "civil and criminal conspiracy." But as an initial matter, Ohio law does not recognize a civil claim for "criminal conspiracy." The Court can dismiss that claim.

As for Plaintiffs' "civil conspiracy" claim, Plaintiffs are required to show (1) a malicious combination, (2) of two or more persons, (3) that caused injury to a person or property, and (4) the existence of an underlying wrongful act that is independent of the conspiracy. *Woodward Constr., Inc. v. For 1031 Summit Woods 1, LLC*, 2015-Ohio-975, ¶ 21 (1st Dist.), citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998). Plaintiffs must at least show "a common understanding or design, even if tacit, to commit an unlawful act." *Id.*, ¶ 22 quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (1996).

According to the Plaintiffs, the necessary unlawful act is the "imposition of a vaccine that is experimental and in violation of Plaintiffs' constitutional rights." (Dkt. #13 at PAGEID 802, ¶519). But as set forth above, an alleged violation of constitutional rights does not qualify as the necessary wrongful act in this context – because Plaintiffs do not have a constitutional right to refuse a private employer's vaccine mandate. And even if they did, TriHealth and the other Defendants are not state actors. For these reasons, Count XII must be dismissed.

### 12.     Count XIII: Civil Liability For Criminal Conduct, R.C. 2307.60.

Plaintiffs' claim for civil liability for criminal conduct under R.C. 2307.60 (Count XIII) should be dismissed for the same reason that Plaintiffs' claims for criminal coercion and for criminal conspiracy fail. Simply, Plaintiffs have not alleged a criminal act to support such a claim.

### 13.     Count XIV: Breach of Fiduciary Duty And Negligence.

In Count XIV, Defendants assert a single claim for "breach of fiduciary duty and negligence." Without alleging any factual basis, Plaintiffs allege that Defendants "had a fiduciary duty by their position to protect Plaintiffs and were in positions of responsibility and trust." (Dkt. #13 at PAGEID 804, ¶534).

But the Court must dismiss this claim for multiple reasons. First, a fiduciary relationship involves a higher level of trust and confidence than an ordinary relationship between an employer and employee. *Treciak v. Dept. of Commerce,* 5th Dist. No. CA00085, 1995 WL 347999, *3 (Mar. 24, 1995), citing *In re: Termination of Emp. of Pratt,* 40 Ohio St.2d 107, 114, 321 N.E.2d 603 (1974). The Ohio Supreme Court has stated that "[a] nurse, by virtue of his or her employment in a hospital, does not occupy a

fiduciary relationship with his or her employer." *State v. Massien*, 2010-Ohio-1864, syllabus ¶ 3. Likewise, "an employer does not generally have a fiduciary duty to his employee." *Rodrick v. Danieli Corp.*, 2006 U.S. Dist. LEXIS 111543, *16 (N.D. Ohio July 12, 2006).

Furthermore, a single individual cannot unilaterally create a fiduciary relationship. "A party's allegation that he reposed a special trust or confidence in another is insufficient as a matter of law to prove the existence of a fiduciary relationship without evidence that both parties understand that a fiduciary relationship existed." *Younglove Constr., LLC v. Psd. Dev. LLC*, 2010 U.S. Dist. LEXIS 92334, *15 (N.D. Ohio Sept. 3, 2010). Thus, a plaintiff's breach of fiduciary duty claim must be dismissed when the plaintiff fails to plead that the defendant also understood that a fiduciary relationship existed. *Id.*

These authorities have obvious application here. The Plaintiffs have not alleged any basis by which the Defendants would owe them a fiduciary duty. The Plaintiffs have not pled any exception to the general rule that an employer does not owe its employees fiduciary duties.

Likewise, Plaintiffs have not pled facts to show that TriHealth understood it was in a fiduciary relationship with any Plaintiff. As set forth above, without a sufficient allegation on that point, Plaintiffs' breach of fiduciary duty claim fails.

Even if a fiduciary relationship existed, Plaintiffs cannot demonstrate the violation of any duties through implementation of a lawful vaccine policy. Defendants implemented the vaccine policy to protect people, including Plaintiffs, from the effects of COVID-19. For this additional reason, Plaintiffs' claim for breach of fiduciary duty fails.

**14.    Count XV: Duress.**

In Count XV, Plaintiffs assert a claim for "duress."  They allege that "Defendants are forcing Plaintiffs to receive the Covid-19 vaccine under economic duress."  (Dkt. #13 at PAGEID 804).  In Ohio, although duress can be an affirmative defense, it is not a cause of action that stands alone and results in damages.  See, e.g., *Sheet Metal Workers Natl. Pension Fund v. Bryden House Ltd. Partnership*, 130 Ohio App.3d 132, 1999-Ohio-40. For this reason, the Court must dismiss this claim.

**15.    Count XVI: Injunctive Relief.**

In Count XVI, Plaintiffs re-assert a claim for "injunctive relief."  (The same claim appears at Count VI.)  But as set forth above, an injunction is a remedy – not a claim. Furthermore, this Court already denied Plaintiffs' request for an injunction. (Dkt. #48 at PAGEID 1238).

**16.    Count XVII: Intentional Infliction Of Emotional Distress.**

In Count XVII, the Plaintiffs claim that Defendants' conduct (with respect to the vaccine mandate) was "outrageous" and caused emotional distress. (Dkt. #13 at PAGEID 806, ¶¶552-555).  Under Civ. R. 12(b)(6), a trial court may dismiss a claim for intentional infliction of emotional distress where the alleged conduct does not, as a matter of law, reach the level of "extreme and outrageous" conduct.  *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 48, citing *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 462 N.E.2d 392; *Wilson v. Chatman,* 2003-Ohio-2818.   Further, parties cannot generally be liable for intentional infliction of emotional distress for acts they were legally entitled to perform.  *Id.*, ¶ 48, citing *Sears Roebuck & Co. v. Swaykus,* 2002 Ohio-7183.

Based upon this authority, this claim fails.  TriHealth's implementation of the vaccine mandate, subject to exemptions, was a lawful act.  Thus, as a matter of law, Defendants' conduct was not "outrageous" – as necessary to state a claim for intentional infliction of emotional distress.  Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law.

### 17.    Count XVII: Attorney's Fees.

Finally, in Count XVIII, the Plaintiffs assert that they are entitled to attorney's fees. This is not a proper stand-alone cause of action, and Plaintiffs have asserted no viable substantive claim that would support such an award.  The Court should also dismiss this "claim."

### III.    Conclusion.

For the foregoing reasons and the reasons set forth in the motions of the other Defendants, the Defendants, TriHealth, Inc., TriHealth G, LLC, Bethesda Hospital, Inc., Bethesda North, and Good Samaritan Hospital, respectfully request that this Court dismiss the Plaintiffs' claims against them.

Respectfully submitted,

/s/  Bradley D. McPeek
Bradley D. McPeek          (#0071137)
Matthew C. Curran          (#0077038)
Elizabeth M. Johnson       (#0097894)
Lindhorst & Dreidame Co., LPA
312 Walnut Street, Ste. 3100
Cincinnati, OH  45202
(513)  421-6630
(513)  421-0212 (fax)
bmcpeek@lindhorstlaw.com
mcurran@lindhorstlaw.com
ejohnson@lindhorstlaw.com
***Attorneys for the TriHealth Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Southern District of Ohio using the Court's CM/ECF system, and such system will send electronic notice to all counsel of record.

 /s/  Bradley D. McPeek
Bradley D. McPeek